**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Richard Floyd McCOY, Jr., Defendant-Appellant.**

**No. 72–1646.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Feb. 21, 1973.

Decided May 7, 1973.

---

James M. Dunn, Asst. U. S. Atty. (C. Nelson Day, U. S. Atty., on the brief), for plaintiff-appellee.

David K. Winder, Salt Lake City, Utah, for defendant-appellant.

Before SETH, McWILLIAMS and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

Richard Floyd McCoy, Jr., was convicted by a jury of aircraft piracy under 49 U.S.C. § 1472(i)(1) and he now appeals his sentence of forty-five years. The only point raised on appeal concerns the validity of a search warrant which purported to authorize a search of McCoy's home. In view of the narrow issue presented to us for review, background facts need not be developed in detail.

A United Airlines plane en route from Denver, Colorado, to Los Angeles, California, was taken over by a so-called sky-jacker who by virtue of threats caused the pilot to change his course and land in San Francisco, California. There, the passengers were permitted to deplane and, pursuant to further direction of the sky-jacker, $500,000 in currency and several parachutes were brought aboard the plane. Still acting under threats from the sky-jacker, the pilot then flew the plane back to Utah, with the sky-jacker apparently bailing out near Provo, Utah, taking the $500,000 with him.

Two days after the sky-jacking, McCoy was arrested at his home in Provo, Utah. McCoy was immediately taken before a magistrate who advised him of his various constitutional rights. At the same time and place an FBI agent named William J. Geiermann presented his affidavit to the magistrate and asked for the issuance of a warrant to search McCoy's residence. The magistrate determined that probable cause was shown by Geiermann's affidavit,

and issued a search warrant. However, the warrant signed by the magistrate, through someone's error or oversight, mistakenly identified the affiant as one Lote Kinney, Jr., also an FBI agent, instead of Geiermann. As indicated, Geiermann was the only one who had presented an affidavit to the magistrate in support of the request for a search warrant. The warrant itself was directed to Kinney, and he and others operating under his direction conducted the ensuing search of McCoy's residence. The search disclosed, among other things, $499,970 in currency, parachute and harness, grenade, gun and ammunition, and the like.

Four days prior to trial, counsel for McCoy filed a motion to suppress the various articles taken in the search of McCoy's home, alleging that the affidavit did not show "probable cause" for the issuance of a search warrant and that the search warrant itself was "insufficient on its face."

The motion to suppress came on for hearing at the commencement of the trial proper. At the conclusion of the relatively short hearing, the trial court stated that it would defer its ruling till the matter came up during the course of the trial. In the course of the trial, then, the circumstances surrounding the issuance of the search warrant were fully explored, initially out of the presence of the jury, and the trial court then denied the motion to suppress. Accordingly, the articles seized in McCoy's home by the FBI agents were received into evidence. As indicated, the only matter urged in this court concerns the propriety of the trial court's denial of McCoy's motion to suppress.

### I.

As indicated, the affidavit upon which the issuance of the search warrant was based was that of agent Geiermann. McCoy's complaint about the sufficiency of the affidavit relates to the fact that the statements contained therein were all based on information acquired by Geiermann from others. In other words, Geiermann himself had no so-called firsthand information, and his statements were all based on what he had been told by other FBI agents who in turn had themselves acquired their information from others. The affidavit, then, according to counsel, is one based on double hearsay, if not indeed triple hearsay, and for that reason alone was insufficient to permit a finding by the magistrate that probable cause did exist for the issuance of the search warrant. Let us examine the affidavit a bit more closely.

In his affidavit, Geiermann stated that he had been advised by a fellow FBI agent from San Francisco that a passenger aboard the hijacked plane had been interviewed and that this passenger had viewed a number of photographs presented to him by the FBI and had identified a picture of McCoy as being a picture of the sky-jacker.

Geiermann in his affidavit also stated that he had been advised by a fellow FBI agent who had interviewed a stewardess aboard the sky-jacked plane that he had received from the stewardess a hand printed note which the sky-jacker had sent the pilot during the flight, and that he had been since advised by a document examiner at the FBI laboratory in Washington, D. C., that the writing on the hand printed note had been identified as being the handwriting of Mc-Coy as contained in his official Army personnel records.

Also, in his affidavit, Geiermann stated that he had been advised by still another fellow FBI agent who had talked with a Utah state highway patrolman who served in the Air National Guard with McCoy and that the patrolman had informed him that McCoy was a sky-diver and that the two of them had discussion regarding a plane sky-jacking and that he had ascertained that on the night of the sky-jacking McCoy was not at home.

■■ Without going into more detail, the foregoing is indicative of the type of information set forth in Geier-

mann's affidavit, which consisted of some six typewritten pages. It is correct to say that all of Geiermann's statements were based on information relayed to him by fellow FBI agents who had in turn acquired their information from others interviewed in the course of their particular investigative endeavors. In this regard *see* United States v. Ventresca, 380 U.S. 102 (1965), where it was held at page 111, 85 S.Ct. 741, 13 L.Ed.2d 684 that observations of a fellow Government officer engaged in a common investigation may form the basis for a warrant applied for by one of their number. So, then, it is quite true that the affidavit contained some double hearsay, and perhaps even a bit of triple hearsay. However, such fact in and of itself does not render the affidavit insufficient. In determining the sufficiency of an affidavit, the test is whether the affidavit sets forth sufficient underlying facts and circumstances to the end that the magistrate can make a detached judgment as to the reliability of the various sources of the affiant's information. The affidavit in the instant case easily measures up to that test.

■ That an affidavit for a search warrant may be based on hearsay is well established. United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), and Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Indeed, such is usually the case. As concerns so-called double hearsay, the Eighth Circuit has held that when a magistrate receives an affidavit which concerns hearsay on hearsay, he need not summarily reject this double hearsay information, but is rather called on to evaluate such information as well as all other information in the affidavit in order to determine whether the informant gathered his information in a reliable way and from reliable sources. United States v. Kleve, 465 F.2d 187 (8th Cir. 1972), and United States v. Smith, 462 F.2d 456 (8th Cir. 1972). We subscribe to the reasoning of those cases.

In evaluating the affidavit of Geiermann, it should be noted that we are not here concerned with professional informers, identified or unidentified. Rather, we are concerned with information acquired by FBI agents from named persons who were either eye witness to the crime or had information acquired from McCoy himself. This we deem to be of considerable significance in connection with the magistrate's determination as to the reliability of the affiant's sources of information. In this connection it was held in United States v. Bell, 457 F.2d 1231 (5th Cir. 1972), that a supporting affidavit in an application for a search warrant must attest to the credibility of an informer and his information, but that such requirement did not extend to information acquired from an eye witness to a crime.

■■ Without belaboring what we deem to be quite obvious, the affidavit of Geiermann in the instant case was amply sufficient to permit the magistrate to exercise his independent judgment as to the reliability of the various sources of information. Indeed, on the basis of the affidavit before him, the magistrate could only have concluded that probable cause did exist for the issuance of a search warrant.

## II.

Through the error or oversight on the part of some person or persons, the search warrant, as issued, named therein the affiant as Lote Kinney, Jr., instead of William J. Geiermann. Counsel asserts that this error renders invalid the warrant and the search based thereon. We disagree, as under the facts of this case we see no resulting prejudice to McCoy.

■ The Fourth Amendment requires that no search warrant shall issue except on probable cause, supported by oath or affirmation, but does not require that the name of the affiant be set forth in the warrant itself. So, we are not here concerned with any constitutional mandate. However, Fed.R.Crim.P. 41(c),

before the recent amendment thereof, did direct that the warrant shall state the "names of the persons whose affidavits have been taken in support thereof." That particular requirement has since been deleted from the rule, the official committee notes to the amendment stating that the requirement that the warrant itself should state the names of the affiants was being eliminated as "unnecessary paper work." However, such requirement was in effect when the search warrant issued in the instant case. Fed.R.Crim.P. 52 directs a trial court to disregard any error, defect, irregularity or variance which does affect a defendant's substantial rights. And under 28 U.S.C. § 2111 an appellate court is directed to "give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." For reasons set forth below we do not believe the misidentification in the warrant of the affiant in anywise prejudiced McCoy.

The reason for the earlier requirement in the rule that the warrant name the affiant is said to be that someone must take responsibility for the facts which purportedly give rise to the probable cause for the issuance of the search warrant, and that the defendant should be apprised of the name of that person. Additionally, it has also been stated that another reason for naming the affiant in the warrant is to enable the aggrieved person to probe and challenge the legality of the warrant by challenging, in court, the affiant and his statements. United States ex rel. Pugh v. Pate, 401 F.2d 6 (7th Cir. 1968), cert. denied, 394 U.S. 999, 89 S.Ct. 1590, 22 L.Ed.2d 777 (1969), and King v. United States, 282 F.2d 398 (4th Cir. 1960). However, as we see it, McCoy was not prejudiced in either of those areas by the fact that Kinney, rather than Geiermann, was named in the warrant as the affiant.

Although we do not attribute great significance to it, the fact is that McCoy was present in the magistrate's office at the very moment Geiermann presented his affidavit to the magistrate. This no doubt was just a coincidence. However, we are advised that a copy of the warrant, with Geiermann's affidavit attached thereto, was presented to McCoy's wife when the search was made of McCoy's home. Thereafter, copies of the affidavit and the search warrant were on file in the magistrate's office until the return thereon was made, at which time all papers were filed in the office of the clerk of the District Court.

Counsel for McCoy at an early time apparently had access to the affidavit, the warrant and return. At least we know that in explaining why they had delayed filing their motion to suppress till only a few days before trial, counsel candidly stated that it was not till then that they had themselves noted that the warrant named Kinney, rather than Geiermann, as the affiant.

Finally, out of the presence of the jury, there was an indepth inquiry of both Geiermann and Kinney, as well as others concerning the statements in the affidavit, and all the facts and circumstances concerning the issuance of the warrant were fully developed. It is this combination of facts and circumstances that leads us to conclude that McCoy was in fact nowise prejudiced by the misnomer in the warrant.

McCoy relies in this regard on Pugh v. Pate, supra, and King v. United States, supra. We do not regard those cases as having great applicability to the instant case. Each concerned an affiant who used a fictitious name and thereafter apparently disappeared. At least, in King, for example, which incidentally was cited and relied on heavily in Pugh, at the hearing on the defendant's motion to suppress the affiant was among the absent and could not be subjected to examination. It was in this setting that the court in King held that the trial court erred in denying the motion to dismiss. Such is a far cry from the instant case. Nor are we persuaded by

United States v. Carignan, 286 F.Supp. 284 (D.Mass.1967), even though the facts there are more akin to the facts of the present case. We are more impressed with the reasoning in United States v. Averell, 296 F.Supp. 1004 (E. D.N.Y.1969), which distinguished *Carignan* and held that the failure to designate the affiant in the search warrant was not fatal where no prejudice was shown.

In short, it would seem clear that under the facts and circumstances disclosed by the record before us, the error here complained of is indeed one that did not affect any substantial right and should accordingly be disregarded.

Judgment affirmed.