**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Russell Millard HAMPTON,
Defendant–Appellant.**

No. 79–2002.

United States Court of Appeals,
Tenth Circuit.

Argued Sept. 16, 1980.

Decided Oct. 24, 1980.

Certiorari Denied Jan. 26, 1981.
See 101 S.Ct. 950.

Roland J. Brumbaugh, Asst. U. S. Atty., Denver, Colo. (Joseph F. Dolan, U. S. Atty., Denver, Colo., with him on brief), for plaintiff-appellee.

Patrick J. Burke, Asst. Federal Public Defender, Denver, Colo. (Michael G. Katz, Federal Public Defender, Denver, Colo., with him on brief), for defendant–appellant.

Before McWILLIAMS, BREITENSTEIN and McKAY, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is a search and seizure case in a bank robbery setting. Russell Hampton was

charged with robbing a federally insured bank in Colorado Springs, Colorado, in violation of 18 U.S.C. § 2113(a) and (d), and for aiding and abetting in such robbery, in violation of 18 U.S.C. § 2. Prior to trial, defense counsel filed a motion to suppress the use at trial of certain items seized in a search of Hampton's residence. The search was conducted by FBI agents under a search warrant issued by a United States Magistrate. After an evidentiary hearing, the motion to suppress was denied, and the items seized in the search of Hampton's home were later introduced in evidence at his trial. A jury acquitted Hampton of aggravated bank robbery, but convicted him of simple robbery. Hampton now appeals from his conviction and sentence entered thereon. On appeal, the only ground urged for reversal concerns the sufficiency of the affidavit which was the basis for the issuance of the search warrant by the United States Magistrate. We agree with the trial court that, under the circumstances, any inaccuracies in the affidavit were not fatal, and we therefore affirm.

On January 23, 1979, the Citadel Bank in Colorado Springs, Colorado was robbed of approximately $900 by two men wearing knit stocking caps as masks. Citadel was insured by the Federal Deposit Insurance Corporation. The Federal Bureau of Investigation investigated the robbery and on January 24, 1979, arrested Hampton, the defendant–appellant, and one Michael Lowell Waters. On January 24, 1979, Waters was interviewed by FBI Special Agent Don Cesare. In his interview with Agent Cesare, Waters was apparently uncommunicative.

Waters was again interviewed on January 25, 1979, by a different FBI agent, one Jeffrey Shandy. On this occasion Waters acknowledged his participation in the robbery of the Citadel Bank and also implicated Hampton. In addition to admitting his involvement in the actual robbery, Waters advised Agent Shandy that he believed the .25 calibre automatic pistol which Hampton used in the robbery, as well as a "large barrelled, large calibre western type gun," which he carried in the robbery, were located in Hampton's residence at 6060 Eaglesnest Drive, in Colorado Springs, Colorado. Waters further advised Agent Shandy that Hampton's share of the proceeds obtained in the robbery were secreted between the mattress and the frame of Hampton's waterbed in his residence on Eaglesnest Drive.

In addition to interviewing Waters, Agents Cesare and Shandy also interviewed two eyewitnesses to the robbery, as well as some four other persons, one of whom drove the getaway car for Hampton and Waters. Armed with all of this information, Agents Shandy and Cesare decided to obtain a warrant to search Hampton's residence.

The affidavit which was presented to the United States Magistrate, sitting in Denver, Colorado, on January 25, 1979, was prepared in about the same manner as was the affidavit in *United States v. McCoy*, 478 F.2d 176 (10th Cir. 1973). The affiant in the instant case was Agent Richard K. Lighthall, assigned to the Denver office of the FBI. Lighthall had no first–hand information of his own concerning the robbery of the Citadel Bank, but he had talked at length on the telephone with fellow agents Cesare and Shandy concerning their investigative efforts. Specifically, Agents Cesare and Shandy each dictated over the telephone the details of their several interrogations. This information was then transcribed and appended to the affidavit of Agent Lighthall in the form of a complaint. The latter consisted of some three pages of single–spaced typewriting, and summarized some seven separate interviews. Agent Lighthall then presented the affidavit, and supporting material incorporated therein, to the United States Magistrate in Denver, who issued a warrant to search the premises at 6060 Eaglesnest Drive in Colorado Springs, Colorado for money taken in the robbery of the Citadel Bank and for a .25 calibre automatic pistol and a large barrelled, large calibre western type gun.

The warrant was executed on the same day it had been issued. Some forty–one $10 Federal Reserve Notes were found in

Hampton's waterbed. Two .25 calibre automatic pistols were found in the kitchen in Hampton's residence. However, the large barrelled, large calibre western style gun was apparently never located. During the course of the search FBI agents discovered, and seized, other items, some of which were introduced into evidence at Hampton's trial.

As above mentioned, prior to trial Hampton moved to suppress the use at trial of all items taken in the search of his residence. His position was that the affidavit of Agent Lighthall, and more particularly the complaint appended thereto, contained some inaccuracies, and was otherwise deficient under the two–prong test of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). An evidentiary hearing was held on the motion to suppress, at which time the only witnesses were Agents Cesare and Shandy. As indicated, the trial court denied the motion to suppress, and, on appeal, this is the only matter urged as ground for reversal.

There is little doubt that there is an inaccuracy in the affidavit, and more particularly, in the so–called complaint appended to the affidavit. In that document, Waters' so–called "confession" is said to have been made to Agent Cesare, when in fact it was made to Agent Shandy during the "second" interview. There is no inaccuracy in the content of Waters' "confession," the only inaccuracy being in the identification of the particular agent to whom the confession was made. Under the circumstances, such inaccuracy is not fatal. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) is of no particular aid to Hampton, as there is nothing to indicate that the FBI agents here involved were guilty of deliberate falsehood or any reckless disregard for the truth, only, at best, an inaccuracy, which the trial court characterized as "inept phraseology."

■ The inaccuracy in the present affidavit is similar to the situation in *United States v. Axselle*, 604 F.2d 1330 (10th Cir. 1979) and *United States v. McCoy*, 478 F.2d 176 (10th Cir. 1973). In *Axselle*, the affidavit erroneously attributed a particular statement to a Mr. Priem, when it should have been attributed to Mrs. Padgett, and a description of an automobile was attributed to Mr. Priem, when such was in fact given by Sheriff McKenney. We held such misnomers were neither material nor prejudicial. See *United States v. Axselle*, 604 F.2d 1330, 1337, footnote 12 (10th Cir. 1979). In *McCoy*, there was perhaps a more fundamental misnomer. An FBI agent named Geiermann presented his affidavit for a search warrant, but, through clerical error or otherwise, the warrant mistakenly identified the affiant as Agent Kinney. In that setting, we held that the misnomer was not fatal to the validity of the warrant. Similarly, in the instant case, we conclude that the fact that Waters' incriminating statement was attributed to Agent Cesare, when it should have been Agent Shandy, does not make the warrant invalid. As above indicated, such inaccuracy is not fatal to the ultimate finding of probable cause. *Franks v. Delaware*, 438 U.S. 154 at 171–72, 98 S.Ct. 2674, at 2684–2685, 57 L.Ed.2d 667 (1978).

■ It is additionally argued that the present affidavit does not otherwise meet the second prong of the *Aguilar* two–prong test. Counsel contends that the affidavit, including the attachments thereto, fails to disclose any facts which would enable the issuing magistrate to exercise an independent judgment as to Waters' credibility and the reliability of the information given Agent Shandy. We disagree with this argument.

In the first place, Waters' statement to Agent Shandy was an admission against Waters' penal interest, and such is in itself indicia of credibility. *United States v. Harris*, 403 U.S. 573, 583, 91 S.Ct. 2075, 2082, 29 L.Ed.2d 723 (1971). Additionally, the FBI not only interviewed Waters, but interviewed some six other persons, two of whom were eyewitnesses to the robbery, and one of whom drove the getaway car. Summaries of the information thus acquired from all seven persons were a part of the affidavit presented to the magistrate. In our view, the material before the magistrate was amply sufficient to allow

the magistrate to make his own independent judgment as to Waters' credibility and reliability.

■ The last matter urged for reversal is that the search went beyond the scope of the warrant. As indicated, the warrant authorized a search of the described premises for money hidden in the waterbed and a .25 calibre automatic pistol and the large barrelled, large calibre western style gun, which Waters used in the robbery. The agents apparently quickly found the money hidden in the waterbed and the .25 calibre automatic pistol. In fact, they found two such pistols. They apparently, however, never did find the gun which Waters carried in the robbery. While searching for that weapon, they did seize certain items, of an incriminating nature, which were later introduced in evidence at trial. In this regard, we find no error. In *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (1971) the Supreme Court recognized that one example of the "plain view" doctrine is a situation in which the police have a warrant to search premises for specified objects, and in the course of such search "come across some other article of incriminating character."

Judgment affirmed.