**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Kenyon Battles TOLERTON,**
**Defendant-Appellant.**

**No. 81–1447.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Nov. 19, 1981.

Decided Feb. 2, 1982.

Certiorari Denied April 26, 1982.
See 102 S.Ct. 2020.

---

Vicki Mandell-King, Asst. Federal Public Defender, Denver, Colo. (Michael G. Katz, Federal Public Defender, Denver, Colo., with her on the brief), for defendant-appellant.

John R. Barksdale, Asst. U. S. Atty., Denver, Colo. (Joseph F. Dolan, U. S. Atty., Denver, Colo., with him on the brief), for plaintiff-appellee.

Before SETH, Chief Judge, and SEYMOUR and PECK *, Circuit Judges.

SETH, Chief Judge.

On July 28, the defendant, Kenyon Tolerton, was arrested on suspicion for the murder of Donna Waugh. The next day the sheriff's department received a warrant to search the defendant's apartment for a hydraulic jack, a pair of white tennis shoes, clothing with vegetation or soil residue, and documents showing the residence of the defendant. On that same day the department received information that the defendant was a convicted felon.

On July 30, the investigation team met to discuss the investigation of the Waugh homicide. Officers were assigned to investigate pawn shops in the area for a hydraulic jack and weapons. Apparently, the officers did not check any pawn shops until August 15 when they went to the Keystone Pawn Shop.

On July 31, Officer Beauchamp received the defendant's written consent to search his apartment. The consent limited the scope of the search to knives, binoculars, bath towels, carpet samples, and camera equipment, among other items. No mention was made of papers or pawn tickets. Also on July 31, the defendant's lawyer told Officer Beauchamp that the defendant had pawned an air pistol at a pawn shop north of the Montgomery Ward store on Broadway. An air pistol was important because the officers were looking for a weapon which might have been used in the kidnapping of the murder victim.

On August 7, the officers received another search warrant for the defendant's apartment. The warrant specified clothing, shoes, fireworks and keys. At this time investigator Diane Walker found a pawn ticket while searching a desk for keys. The ticket was for the Keystone Pawn Shop, dated March 19, and listed the items pawned as an air pistol and a pistol. She showed the ticket to Officer Beauchamp who recorded the information and returned the ticket to the desk drawer.

On August 14, the police received still another search warrant for Mr. Tolerton's apartment. It was limited to crew socks and fireworks debris. At this time Officer Beauchamp seized the pawn ticket she had seen on the 7th. She then went to the Keystone Pawn Shop and discovered that the defendant had pawned an air pistol and a .22 caliber semiautomatic Ruger pistol on March 19.

The defendant was later indicted for violations of 18 U.S.C. §§ 922(a)(6) and 924(a), false statements in acquisition of a firearm, and 18 U.S.C. §§ 922(h) and 924(a), possession of a firearm by a convicted felon. Defendant moved to suppress the pawn ticket, the Ruger .22 caliber pistol, and documents relating to the acquisition of a firearm. The trial court denied the motion to suppress and ruled that the gun and documents were not fruits of an illegal search or seizure. The trial court did not rule on the admissibility of the pawn ticket as such since the government agreed not to introduce it.

The defendant now appeals claiming that the pistol and documents were fruits of an illegal search and seizure of the pawn ticket, and should be suppressed.

■ The pawn ticket was not listed on the search warrant issued on either August 7 or August 14, and was not included in the consent for search of July 31. The government argues that the seizure of the pawn

---

* Honorable John W. Peck, United States Circuit Judge for the Sixth Circuit, sitting by designation.

ticket was justified under the plain view doctrine. The plain view doctrine requires that the government show that the initial intrusion which afforded the plain view was lawful, that the discovery was inadvertent, and the incriminating nature of the evidence was immediately apparent. *Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, and *United States v. Hampton*, 633 F.2d 927 (10th Cir.).

Officer Beauchamp and her fellow investigators were lawfully in the defendant's apartment on August 7 pursuant to a valid search warrant. The warrant used on the 7th included keys. A search for keys would include a search of desk drawers. Officer Beauchamp recorded the information found on the pawn ticket on August 7. Investigator Walker had found the ticket in the drawer. She testified at the suppression hearing that she was looking for "anything involved in the case" when she found the pawn ticket. This was obviously too broad a view of her authority, but regardless of that she was properly in the desk drawer. Her act did not turn the limited search into an exploratory one, *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, despite her intentions.

Although the pawn ticket was never introduced into evidence, the government introduced the pistol found at the Keystone Pawn Shop and documents subsequently uncovered concerning the acquisition of the weapon. The issue is whether the gun and documents were illegally obtained and should have been excluded from evidence under *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

The search conducted August 7 is the significant event and the one we are concerned with. The ticket was then found while a lawful search for keys was in progress and the information appearing on the ticket was recorded. By August 7 any pawn ticket had taken on unusual significance by reason of a series of events which had taken place. As mentioned above, officers investigating the murder had been assigned on July 30 to check pawn shops in a general area for certain equipment *and* for

weapons. The attorney for the defendant had on July 31 told Officer Beauchamp that the defendant had pawned an air pistol at a shop near a certain building. Also, it was known at the time that the defendant had been convicted of a felony. It was the combination of these events and information which made any pawn ticket at defendant's apartment of such significance that it should be considered to have been "a piece of evidence incriminating the accused" for the purpose of the plain sight doctrine under *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. The pawn ticket seen on August 7 was thus quite different from typical documentary material not listed in a warrant. The ticket thus did not have to be read before it became important as the recognition of it as a pawn ticket was enough.

*United States v. Hampton*, 633 F.2d 927 (10th Cir.), was concerned with a second similar gun found during the execution of a search warrant for a particular gun. We there said in part:

> "In *Coolidge v. New Hampshire* . . . the Supreme Court recognized that one example of the 'plain view' doctrine is a situation in which the police have a warrant to search premises for specified objects, and in the course of such search 'come across some other article of incriminating character.'"

We have not limited the seizure of items not named in the warrant to items of contraband. *See United States v. Hampton*, and *Sanders v. United States*, 238 F.2d 145 (10th Cir.). There was some contraband seized in *United States v. DePugh*, 452 F.2d 915 (10th Cir.), while other items were not. *Coolidge* does not require or suggest that the additional items be contraband but only that it be some other article of incriminating nature. It is apparent that the seizure must not be during the course of a general search but instead under a warrant properly limiting the search with an inadvertent discovery.

■ Thus the record demonstrates that the elements set forth in *Coolidge v. New Hampshire*, and in cases from this circuit,

were present on August 7. The officers were properly on the premises, properly in the desk drawer, the discovery of the ticket was inadvertent, and it was immediately apparent that it was an article of incriminating character.

The ruling by the trial court as to the evidence and the judgment is affirmed.