972 F.2d 1345
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellant,
v.
Kelvin LEE, Defendant-Appellee.
 No. 91-10184.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 9, 1992.
Decided July 23, 1992.
 
 Before BOOCHEVER, REINHARDT and BEEZER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Kelvin Lee had a pager. He had the pager with him when he and five others were arrested for heroin distribution. The numbers stored in that pager were retrieved pursuant to a search warrant, and Lee moved to suppress the numbers.
 
 
 3
 The district court agreed with Lee that the affidavit filed in support of the warrant did not supply probable cause, that a previously filed affidavit could not lend additional support, that none of the proffered exceptions to the warrant requirement applied, and that Leon's good faith exception for invalid warrants was inapplicable. Accordingly, the district court ordered the numbers suppressed. The government timely filed an appeal pursuant to 18 U.S.C. § 3731. We hold that the good faith exception does apply here and we reverse.
 
 
 4
 * When "888" appeared on his pager, DEA Special Agent Heng knew the heroin had arrived. As arranged through a confidential informant, the undercover agent went to a room in San Francisco's Grosvenor Hotel. There he met Suen Man Tang and Ren Hai, the married couple who had given him that pager code, a small paper bindle with a heroin sample, and the promise of a major heroin sale. Tang and Hai displayed heroin; Heng displayed money; and the three waited. They waited for the couple's associates, who were to make the promised delivery. While they waited, Tang and Hai placed and received calls, using both the hotel room's telephone and a cellular telephone. Hai's dialing patterns suggested that he placed at least one call to a pager.
 
 
 5
 Kelvin Lee and three other men pulled up to the Grosvenor Hotel in an old VW Rabbit. Two of the men, Kelvin Lee and Shao Rong Li, conversed briefly with Hai in the hotel lobby. While Li followed Hai upstairs to the hotel room, Lee joined the other two men in the hotel bar. Upstairs, Li handed two plastic-wrapped packages to Agent Heng. Heng inspected the packages, inquired about subsequent heroin deliveries, and then gave the prearranged arrest signal. Meanwhile, agents arrested the three men in the hotel bar. Lee had a pager; another man had a loaded semiautomatic pistol; the third man had a loaded semiautomatic pistol, a pager and a cellular telephone.
 
 
 6
 The next day, November 7, 1990, Magistrate Judge Brennan reviewed Agent Heng's affidavit and issued a complaint charging Kelvin Lee with distribution of heroin and conspiracy to distribute heroin. Agent Heng's 21-page affidavit sets forth (in greater detail) the circumstances as described above, and includes background information about the overall heroin deal arranged with Tang and Hai.
 
 
 7
 On November 8, the same magistrate judge received a superceding affidavit which corrected errors in the first one.[1] That day, she issued a superceding complaint.
 
 
 8
 Also on November 8, the government filed with Magistrate Judge Brennan an application for a warrant to search the memory banks of the four pagers and three cellular telephones taken during the arrests. The accompanying affidavit, signed by DEA Agent Plunkett, describes the overall drug transaction, with an emphasis on the use of pagers and cellular telephones.
 
 
 9
 This affidavit makes scant mention of Kelvin Lee. It does not reference Agent Heng's previously filed, and more detailed affidavit; it does not reference the previously issued complaint. It mentions Lee, either directly or arguably by innuendo, only as follows.
 
 
 10
 29. On November 6, 1990, TANG and HAI along with Shao Rong LI, Bob C. LEE, Kelvin LEE and Ronald Kam Tat YEE were arrested following the delivery of approximately one (1) pound of heroin to S/A Heng at the Grovesnor [sic] Hotel, So. San Francisco, California. At the time of their arrests, Bob C. LEE, Shao Rong LI and Ronald Kam Tat YEE were armed with handguns. In addition, Shao Rong LI, Ren HAI and Ronald Kam Tat YEE all possessed portable cellular telephones.
 
 
 11
 30. In addition to the telephones, Ren HAI, Shao Rong LI, Kelvin LEE and Ronald Kam Tat YEE all possessed digital pagers. During the course of the undercover conversations between S/A Heng and Ren HAI preceding his arrest, HAI placed at least one telephone call to a digital pager. Since the time of their arrests, the digital pagers seized from the above subjects have continued to receive signals indicating the receipt of phone calls.
 
 
 12
 31. Based upon the training and experience of your affiant [Special Agent Plunkett], it is common place in todays drug trafficking community for traffickers to utilize digital pagers and cellular telephones to communicate between each other and to avoid detection by law enforcement authorities.
 
 
 13
 ............................................................
 
 
 14
 ....................
 
 
 15
 * * *
 
 
 16
 33. During the evening of November 6, 1990, Hai placed a phone call wherein he punched in numbers without speaking, actions your affiant believes to be consistent with the use of digital paging devices. After a short time, Hai received an incoming call.
 
 
 17
 * * *
 
 
 18
 34. Based on your affiant's experience and training, I know that the pagers held by Ren Hai, Shao Rong Li, Ronald Kam Tat YEE and Kelvin LEE, have the ability to store the telephone numbers pulsed into them. Your affiant seeks to retrieve those numbers as of the date and time of issuance of the warrant.
 
 
 19
 35. Based upon the above aforementioned facts, your affiant believes probable cause does exist to believe that the digital pagers referenced above contain stored electronic communications which are evidence of a conspiracy between those arrested and others yet unidentified....
 
 
 20
 The magistrate judge issued the requested search warrant. Agent Plunkett pressed a button on Lee's pager, and the pager displayed numbers entered by those who had accessed the pager. In a pretrial motion, Lee moved to suppress these numbers, as well as those retrieved from the other arrestees' pagers and cellular telephones. The district court granted the motion only as to the numbers retrieved from Lee's pager. This court stayed Lee's trial pending resolution of the government's appeal. Lee remains free on bail.
 
 II
 
 21
 We review de novo the district court's determination that a search warrant was not supported by probable cause. United States v. Howard, 828 F.2d 552, 554 (9th Cir.1987). We also review de novo the district court's determination that the "good faith" exception to the exclusionary rule does not apply to this search. United States v. Hove, 848 F.2d 137, 139 (9th Cir.1988).
 
 III
 A. The Search Warrant Affidavit
 
 22
 The government contends that the magistrate judge's decision to issue the warrant was not clearly erroneous. It first argues that Agent Plunkett's affidavit alone supplies sufficient probable cause.
 
 
 23
 "[O]rdinarily a magistrate's determination that sufficient probable cause exists to issue a search warrant will not be overturned unless it is clearly erroneous." United States v. Elliott, 893 F.2d 220, 222 (9th Cir.), amended by 904 F.2d 25, cert. denied, 111 S.Ct. 268 (1990). A magistrate's task in issuing a search warrant is "simply to make a practical, common sense decision whether, given all of the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Where an affidavit is reasonably susceptible to conflicting inferences, we accept those supporting the magistrate judge's decision. Id. at 240.
 
 
 24
 Agent Plunkett's affidavit details the activities of Tang, Hai and Li, describes their use of pagers and cellular telephones, and states that other suspects were armed. As to Lee, however, the affidavit reports little. It reports that Lee was arrested wearing a pager, that he was arrested with others at the hotel following the heroin delivery,[2] that other arrestees were armed, that pagers were used in this drug deal, that pagers are often used in drug deals, and that Hai appeared to have called a pager from the hotel room.
 
 
 25
 "All the circumstances set forth in the affidavit" that was submitted with the search warrant application do not suggest "a fair probability" that evidence of the heroin deal would be found in Lee's pager. Gates, 462 U.S. at 238. This affidavit's deficiency is that it does not "establish a reasonable nexus between the item to be seized and the criminal behavior alleged." United States v. Holzman, 871 F.2d 1496, 1510 (9th Cir.1989).
 
 
 26
 Drug dealers use pagers, but so too do financiers, expectant mothers, senators, sales representatives, parents, bicycle messengers and doctors. As one news report commented, pagers are on the "fast-track to ubiquity." Lamont Wood, "There's no escaping beepers; Some say pagers may soon number 15 million in U.S.," Chicago Tribune, March 18, 1990, at C20. More than ten million are beeping or shaking in the United States.[3] Id. Mere possession of a pager cannot, therefore, establish probable cause to believe that the pager contains evidence of drug trafficking.
 
 
 27
 The fact that the person wearing the pager was arrested in the company of suspected drug dealers raises suspicions, but does not amount to probable cause. Our jurisprudence does not countenance guilt by association, Ybarra v. Illinois, 444 U.S. 85, 90-91 (1979), and Agent Plunkett's affidavit does not show more than mere association. It does not show that Lee was a participant in the ongoing criminal conduct of Tang, Hai and the others. Cf. United States v. Rodriguez, 869 F.2d 479, 483 (9th Cir.1989) (defendants "seen doing more than associating ... They were seen as participants in a chain of [ongoing criminal] conduct....").
 
 
 28
 Given the absence in Agent Plunkett's affidavit of "a reasonable nexus between the item to be seized and the criminal behavior alleged," Holzman, 871 F.2d at 1510, probable cause was lacking, and the magistrate judge's probable cause determination was clearly erroneous.
 
 B. Agent Heng's Affidavit and the Complaint
 
 29
 The government next argues that the magistrate judge's probable cause determination may be supported by Agent Heng's affidavit, which she had recently reviewed, and the ensuing criminal complaint, which she had recently issued.[4] The magistrate judge's determination did not reference either document.
 
 
 30
 "The facts upon which the magistrate bases his probable cause determination must appear within the four corners of the warrant affidavit; the warrant cannot be supported by outside information." United States v. Rubio, 727 F.2d 786, 795 (9th Cir.1983). We have reaffirmed this four-corners rule in several recent decisions. See e.g. United States v. Bertrand, 926 F.2d 838, 841 (9th Cir.1991) (review "limited to information and circumstances within the four corners of the underlying affidavit") (citation omitted); Holzman, 871 F.2d 1496, 1510 (9th Cir.1989) (necessary data "must be contained within the four corners of a written affidavit given under oath") (citation omitted). Our caselaw has not elevated the dictum from United States v. Fogarty, 633 F.2d 928, 930 (9th Cir.1981) to allow reliance on information which is outside the supporting affidavit and which is not referenced by the magistrate judge.
 
 
 31
 The government cites United States v. Ellsworth, 647 F.2d 957 (9th Cir.1981), cert. denied 456 U.S. 944 (1982), and its progeny for the proposition that the complaint or indictment may supply probable cause. Ellsworth does not stand for so broad a proposition.
 
 
 32
 As explained in Rubino 's discussion of Ellsworth "[the indictment] is not, of itself, an adequate substitute for articulable facts in the warrant affidavit." 727 F.2d at 795. "The affidavit in Ellsworth provided a strong showing of probable cause independent of the fact that an indictment had been returned against the defendant." Id. at 795 n. 3.; see also United States v. Seybold, 726 F.2d 502, 503-04 (9th Cir.1984) (indictment, incorporated by reference, added support to probable cause determination); United States v. Hernandez-Escarsega, 886 F.2d 1560, 1566 (9th Cir.1989) (fact of prior indictment could be considered along with "wealth of incriminating information detailed in [the search warrant] affidavit"), cert. denied, 110 S.Ct. 3237 (1990).
 
 
 33
 This four-corners rule is not a mere technicality. It is grounded in the Fourth Amendment's requirement that a neutral and detached magistrate determine that probable cause exists before issuing a search warrant. It is that determination which the rule protects. Rubio, 727 F.2d at 794-95. We would undercut the Fourth Amendment's protections if we were to consider what should have, could have, or potentially might have been used to support the magistrate's determination. Thus, we consider what was explicitly put forward to support the magistrate's determination: the affidavit in support of the search warrant.
 
 
 34
 We cannot look to Agent Heng's affidavit or the criminal complaint to supply the probable cause needed to support the search warrant. Thus, the search warrant was not supported by probable cause. Agent Plunkett retrieved the numbers from Lee's pager pursuant to an invalid search warrant.
 
 IV
 
 35
 The government contends that the evidence is admissible under Leon's good faith exception.[5] Evidence gathered as a result of an invalid search warrant may not be suppressed if the executing officers had an objective good faith belief in the validity of the warrant. United States v. Leon, 468 U.S. 897 (1984). "[O]ur good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Id. at 922, n. 23.
 
 
 36
 There can be no objective good faith belief if the warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. at 923 (citation omitted). We established above that Agent Plunkett's affidavit does not supply probable cause for the warrant. We consider here whether it supplies the quantum of suspicion required to make applicable the good faith exception.[6]
 
 
 37
 We held that the search warrant affidavit in United States v. Hove, 848 F.2d 137, 139 (9th Cir.1988), lacked the required "indicia of probable cause." In Hove, a warrant authorized the search of a residence on DeAnza Road. The affidavit accompanying the warrant contained no information linking the defendant or any criminal activity to that location. The affidavit "offer[ed] no hint as to why the police wanted to search this residence."[7] Id. at 139-140. Because "the affidavit simply list[ed] the DeAnza address as a location to be searched," 848 F.2d at 140, we declined to apply the Leon good faith exception.
 
 
 38
 We held that the search warrant affidavit in United States v. Ramos contained the required "indicia of probable cause." 923 F.2d 1346, 1354-55 (9th Cir.1991). The affidavit in Ramos did not name the defendant, but it described him "as an 'unidentified male Latin[ ] wearing a green shirt and tan hat.' " Id. at 1351. The affidavit related that Ramos drove to a certain residence in his truck, then drove a van in a counter-surveillance manner, unloaded a box from the van, drove the van to the apartment complex where he lived, then drove back to his truck, left the van there and drove away. The affidavit also related the drug trafficking activities of others. Id. A magistrate issued a search warrant for Ramos' apartment and storage area.
 
 
 39
 We agreed with Ramos that the search warrant affidavit did not supply probable cause because "it failed to show a nexus between the criminal activity and the placed to be searched." Id. Nonetheless, we held that the good faith exception applied. As we noted, "[i]n contrast to the situation presented in Hove, the affidavit supporting the search warrant clearly linked Ramos' apartment complex to the criminal enterprise observed by the officers." Ramos, 923 F.2d at 1354. A vehicle laden with cocaine had been parked outside the complex before it was seized, and Ramos, a previous driver of the vehicle, lived at the complex. Id. "While the affidavit ... may not have been the model of thoroughness, it cannot be said that document 'd[id] not link this location to the defendant.' " Id. (citation omitted).
 
 
 40
 Agent Plunkett's affidavit provides more relevant details than did the affidavit in Hove; it compares favorably to the affidavit in Ramos. Agent Plunkett's affidavit does not merely list Lee's pager as one of the communication devices to be searched. Cf. Hove, 848 F.2d at 139 ("affidavit simply lists the DeAnza address as a location to be searched"). It provides links between Lee, his pager, and the heroin deal. See Ramos, 923 F.2d at 1354 ("affidavit ... clearly linked Ramos' apartment complex to the criminal enterprise observed by the officers"). Although these links are insufficient to supply probable cause, they are sufficient to supply "indicia of probable cause."
 
 
 41
 The affidavit relates that Lee was arrested with others at the hotel following the heroin delivery, that other arrestees were armed, that pagers were used in this drug deal, that pagers are often used in drug deals, that Hai appeared to have called a pager from the hotel room and that Lee had a pager with him. The search warrant affidavit in this case is not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Leon, 468 U.S. at 923 (citation omitted).
 
 V
 
 42
 The suppression order is REVERSED and the case is REMANDED for further proceedings.
 
 
 43
 BOOCHEVER, Circuit Judge, concurring separately:
 
 
 44
 I agree with majority disposition that the good faith exception established in United States v. Leon, 468 U.S. 897 (1984), applies but I would not reach the issue whether the magistrate erred in issuing the warrant based on the affidavit submitted to him. It may be arguable that Kelvin Lee's connection to the conspiracy to sell heroin is not sufficiently detailed to indicate probable cause for the search of his pager. There is, however, abundant evidence to justify the search under the good faith exception established by Leon. Evidence gathered as a result of an invalid search warrant may not be suppressed if the executing officers had an objective good faith belief in the validity of the warrant. Id. at 922.
 
 
 45
 Agent Plunkett's affidavit provides more relevant details than did the affidavit in Hove; it compares favorably to the affidavit in Ramos. Agent Plunkett's affidavit does not merely list Lee's pager as one of the communication devices to be searched. Cf. United States v. Hove, 848 F.2d 137, 139 (9th Cir.1987) ("affidavit simply lists the DeAnza address as a location to be searched"). It provides links between Lee, his pager, and the heroin deal. See United States v. Ramos, 923 F.2d 1346, 1354 (9th Cir.1991) ("affidavit ... clearly linked Ramos' apartment complex to the criminal enterprise observed by the officers"). Here, an officer could reasonably in good faith believe that the search warrant clearly linked the pager to the criminal enterprise. When there are conflicting inferences from the affidavit we must accept those supporting the magistrate's decision. See Illinois v. Gates, 462 U.S. 213, 240 (1983). As explained in the majority disposition, a reasonable inference from the affidavit is that Kelvin Lee was arrested, with others involved in the sale, at the hotel following the delivery there of one pound of heroin. The others arrested with him carried weapons, cellular telephones and pagers. Cellular telephones and pagers were used in accomplishing the transaction, and Kelvin Lee had a pager with him when arrested. Whether or not the links are sufficient to supply probable cause, they are sufficient to supply "indicia of probable cause." The search warrant affidavit in this case is not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Leon, 468 U.S. at 923 (citation omitted).
 
 
 46
 We should encourage agents to apply for search warrants in situations such as that encountered in this case, rather than taking on themselves the authority to conduct the search based on close calls that exceptions to the search warrant are applicable. See United States v. Ventresca, 380 U.S. 102, 105-06 (1965). That important policy is encouraged by proper application of the good faith exception rule.
 
 REINHARDT, Circuit Judge, dissenting:
 
 47
 I dissent. The affidavit supporting the search warrant states only that Kelvin Lee was arrested and that he possessed a digital pager which has the capacity to store telephone numbers. Otherwise, the affidavit makes no reference to him. None of the facts and circumstances relating to Lee that are set forth in the second paragraph of Section I of the majority's disposition are included in that affidavit, and, as the majority concedes, it is only that affidavit to which we may look. Under these circumstances, it is incomprehensible to me how the majority can conclude that a reasonable police officer reading the affidavit could possibly have believed that it provided probable cause.
 
 
 48
 The majority and I are also in disagreement on one critical point. The majority states that Lee was arrested at the hotel along with others following the delivery of the heroin. That in my opinion is not an accurate reading of the affidavit. The affidavit states clearly that Lee and others were arrested after the heroin was delivered at the hotel. The precise statement is "On November 6, 1990, TANG and HAI along with Shao Rong LI, Bob C. LEE, Kelvin LEE and Ronald Kam Tat YEE were arrested following the delivery of approximately one (1) pound of heroin to S/A Heng at the Grovesnor [sic] Hotel, So. San Francisco." (Paragraph 29 of affidavit.) The fact that Lee and other defendants were arrested after a crime was committed is of no significance whatsoever. That is always the case. In view of what the affidavit actually says, I need not speculate on what the significance might have been had it stated that Lee and others were arrested at the hotel immediately following the delivery of heroin at that location.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 The first affidavit had erred in stating that Kelvin Lee was armed when arrested. In fact, as noted in the superceding affidavit, the armed Lee was Bob Lee
 
 
 [2]
 The affidavit states that Tang, Hai, Le, Lee, Lee, and Yee "were arrested following the delivery of approximately one (1) pound of heroin to [Special Agent] Heng at the Grovesnor [sic] Hotel...." Lee correctly points out that the grammatical structure of this statement makes its meaning ambiguous. It could mean that these six people were arrested at the hotel following the heroin delivery. That construction suggests that the six were together and in the same vicinity as the drug deal
 Alternatively, it could mean that after the heroin delivery at the hotel, these six people were arrested. Under that construction, the arrests could have taken place at disparate times and places, thus attenuating the links between these six people.
 Each interpretation is reasonable. Because we review for clear error, we will presume the interpretation more favorable to the magistrate's determination of probable cause. Thus, we read this sentence to say that Lee and the others were arrested at the hotel following the heroin delivery.
 
 
 [3]
 Apparently pagers are more common in Asian cities. As reported in one newspaper, "AT & E's Henderson said that in the U.S. only 3.5 percent of people wear pagers, while in Asian cities such as Hong Kong and Singapore, 10 percent wear them. The difference, said Henderson, is that urban Asians use pagers for family and social contact instead of just for business as in the United States." Jon Van, "Pagers catch up to Dick Tracy; Wristwatch units could open new markets for service," Chicago Tribune, April 30, 1990, at C1
 
 
 [4]
 Lee conceded at oral argument that if Heng's affidavit had been attached to the search warrant application, the warrant to search his pager would have been supported by probable cause
 
 
 [5]
 Because we find this doctrine applicable, we need not discuss the government's argument that a warrant was unnecessary because this situation falls within the plain view exception, the search incident to arrest exception and the exigent circumstances exception
 
 
 [6]
 We recognize, as have many others, that this analysis obviates the need in some cases for government establishment of, or judicial assessment of probable cause. The Supreme Court addressed this criticism in Leon. The Court stated that its decision left untouched the probable cause standard. 468 U.S. at 923. It also stated that reviewing courts would use their informed discretion when deciding whether to address the probable cause question or proceed directly to the good faith analysis. Id at 924-25
 
 
 [7]
 The affiant knew of, and had recited to a stenographer, facts which likely would have established a sufficient link. These facts were inadvertently omitted from the affidavit. Hove, 848 F.2d at 139