UNITED STATES of America,
Plaintiff-Appellee,

v.

Roy Charles SPACH,
Defendant-Appellant.

No. 74–1648.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 7, 1975.

Decided July 16, 1975.

Frederick H. Miller, Madison, Wis., for defendant-appellant.

David C. Mebane, U. S. Atty., John Byrnes, Asst. U. S. Atty., Madison, Wis., for plaintiff-appellee.

Before PELL and TONE, Circuit Judges, and PERRY, Senior District Judge.*

* Senior District Judge Joseph Sam Perry of the United States District Court for the Northern District of Illinois is sitting by designation.

PELL, Circuit Judge.

This is a direct appeal by Spach who was convicted of violating 18 U.S.C. § 1951 by "threatening physical violence to persons to obtain property controlled by Hilldale State Bank, in furtherance of plan of extortion. . . . " The only issues presented by appellant are whether the district court erred in denying defendant's motions to suppress evidence obtained during the search of defendant's house and car. The searches were pursuant to warrants, but appellant alleges that the affidavits which were the bases for the issuance of these warrants were insufficient.

## I. The Affidavits

### A. *For House Search Warrant*

The affidavit supporting the warrant for the search of defendant's house was made by Henry W. Curran, Jr., an F.B.I. agent. Curran first relates the facts disclosed to him in an interview with Mrs. David Mergen of Madison, Wisconsin. She advised him that a man wearing an Afro-style wig and sunglasses forced his way into her residence brandishing a firearm. He caused her to tape her brother to a chair and then telephone her husband, the vice-president of the Hilldale State Bank. The individual required her to explain to her husband that she and her brother were being held captive. Curran then states that he had been advised by David E. Templeton, another F.B.I. agent, that Templeton interviewed Mr. David Mergen. Mr. Mergen told him that his wife telephoned and said she and her brother were being held captive by a man with a gun. He then said he spoke to a man who told him to take $10,000 in $20.00 bills and deliver them to a particular spot. The man on the phone also told him that he was being watched. Mr. Mergen told Templeton that he complied with these orders by taking $10,000 of bank funds and that when he was depositing the money in the location indicated, he saw a 1963 or 1964 gray or green Chevrolet. After dropping off the money, he telephoned the police.

Curran next relates that Thomas Madden, another F.B.I. agent, advised him that he talked with Richard Lewis, who stated that he is personally acquainted with Roy C. Spach (the defendant) and Donald Westbury. The affidavit continues:

"That Spach resides at 4385 Doncaster Drive with two children and that Westbury stays at that address on occasion and takes care of Spach's two children. That some time last week, Westbury told Lewis that Spach was intending to rob a bank. That this morning, Lewis again talked to Westbury and Westbury told Lewis that Spach had informed him that Spach had 'done the job' referring to the account of the robbery of the Hilldale State Bank through the extortion device referred to above and that at the time of the discussion was prominent in the morning newspaper. He further advised him that they had gone to Jack White Ford, Inc., Mayfair Road, in Milwaukee, Wisconsin, and had purchased a 1972 Dodge Charger for approximately $3,000 and had paid for it in $20 bills. Affiant has been advised by the F.B.I. office in Milwaukee that Jack White Ford, Inc. did sell a 1972 Dodge in the evening of October 3, and that it was paid for by $20 bills totaling $2,960 plus other denominations. That affiant has been advised by Gregg B. Hunter, whom he knows to be a Special Agent of the F.B.I., that Roy C. Spach resides at 4385 Doncaster Drive and that he knows this because he went to that address and interviewed Spach this afternoon. That the description of the premises contained in the caption of this document was provided affiant by Hunter. That affiant has talked with Detective Captain Stanley Davenport of the Madison Police Department who advised him that he has been provided information by an unnamed informant who he knows to be a reliable person and who has provided him information in the past. Davenport said that Spach has the proceeds of the robbery hidden in three locations within the

described premises, specifically, in a potted plant near the French door, in the compartment of the freezer in the refrigerator, and underneath the refrigerator. That Davenport advises that all of this information was obtained from the above-mentioned unnamed informant who he knows to be a reliable person."

### B. For Car Search

The affidavit supporting the warrant for the car search is substantially identical except it relates that a clerk at the Wisconsin Department of Transportation indicated that the car to be searched was titled in the name of Roy C. Spach, Madison, Wisconsin, and it relates that money with the same serial numbers as that taken from the bank was found when searching the house but that certain items had not been located.

### II. Hearsay in Affidavits

 It is undisputed that hearsay may be used in affidavits supporting the issuance of search warrants. *See, e. g., Jones v. United States,* 362 U.S. 257, 269, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). When hearsay is used the magistrate must be informed of some underlying circumstances from which the informer drew his conclusions and some underlying circumstances from which the officer could conclude that the informer was credible and that his information was reliable. *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Appellant argues that long chains of hearsay are suspect, relying in part on *United States v. Pearce,* 275 F.2d 318 (7th Cir. 1960); but the issue is not the length of the chain but rather whether both prongs of the *Aguilar* test are met at each level. *United States v. Carmichael,* 489 F.2d 983, 986 (7th Cir. 1973); *United States v. McCoy,* 478 F.2d 176 (10th Cir. 1973), *cert. denied,* 414 U.S. 828, 94 S.Ct. 53, 38 L.Ed.2d 62. As will be discussed in more detail below, even where an affidavit

does not fully meet the *Aguilar* tests, it may be sufficient if circumstances show that it is likely to be as reliable as one which does meet the tests. *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

### III. House Affidavit Without Unnamed Informer's Tip

The district court did not find it necessary to rely on the unnamed informer's tip in upholding the search warrant. Spach argues that without the informer's tip the affidavit is deficient first because it is insufficient to link the defendant to the crime, and second because even if it links defendant to the crime, it is insufficient to show probable cause that any fruits of the crime or evidence were in defendant's house.

### A. The Defendant and the Crime

 According to the defendant only two statements in the affidavit link the defendant to the crime other than the statements of the unnamed informer. The first is the statement of Westbury that defendant was intending to rob a bank. Defendant argues that this statement cannot be credited because 1) there is no information in the affidavit on how Westbury obtained this information and 2) the affidavit contains no facts showing Westbury to be reliable. The second statement to which defendant refers is the statement Westbury attributed to the defendant to the effect that he had "done the job." Defendant argues that this statement cannot be credited because 1) no showing was made that "job" referred to the crime and 2) the conclusion drawn that "job" refers to the crime is unsupported by facts. Additionally, defendant argues that nothing referred to in the Westbury-Lewis-Madden-Curran chain (hereinafter Westbury chain) can be credited because the affidavit contains no facts whereby the magistrate could conclude Lewis was credible.[1]

1. The defendant quite properly does not argue that it was improper for Curran to rely on information provided by other government

agents. See *United States v. Ventresca,* 380 U.S. 102, 111, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Rugendorf v. United States,* 376 U.S.

The Government counters these arguments by arguing that even though there is no showing in the affidavit that Lewis is credible, we may rely on him because he is named and therefore the problems inherent in the use of unnamed informers are not present. In addition his statements are specific and are not of the type that might be a casual rumor. Next the Government argues that Westbury's statements are against his penal interest and therefore may be credited. Finally the Government argues that there is sufficient corroboration of the Westbury chain so that all of Westbury's statements may be credited.

 Cases involving unnamed or paid informers are distinguishable from cases involving informers who are victims of crimes or citizens with no apparent motive to falsify information. Where such a person provides information, the affidavit should set forth facts so that the magistrate and reviewing courts can understand this. This was done in cases where we have upheld affidavits based on information supplied by such persons. *United States v. Wilson*, 479 F.2d 936 (7th Cir. 1973); *United States v. Unger*, 469 F.2d 1283 (7th Cir. 1972), *cert. denied*, 411 U.S. 920, 93 S.Ct. 1546, 36 L.Ed.2d 313 (1973). That a person is named is not alone sufficient grounds on which to credit an informer, but it is one factor which may be weighed in determining the sufficiency of an affidavit.

 The Government is correct that an admission against penal interest may support the reliability of an informant. *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *United States v. Carmichael, supra.*

The statements allegedly made by Lewis reasonably raise the inference that he was subject to being charged as an accessory to the crime and that the information possessed by him would be the basis of guilt of misprision of felony. We therefore cannot exclude the against-penal-interest syndrome from our consideration even though for the other reasons developed in this opinion we would need to place no reliance upon this factor.

 When an informer provides information which is specific and detailed, it is more probable that the information came from a reliable source than when the information is general—or as the Supreme Court put it in *Spinelli*—the type of information which may have been picked up as a rumor in a bar. In *Harris* even the dissent stated that more than ordinarily detailed descriptions of a suspect's criminal activities might be probative of reliability of an informant and especially, reliability of the information. In *United States v. Unger, supra,* this court held that specificity, when accompanied by a showing of a lack of desire to spite defendant or any self-serving motive, was sufficient to support the reliability of the informant prong of the *Aguilar* test. Specificity in this case would not be sufficient alone to support the reliability of Lewis. Lewis only claims to be repeating information provided by Westbury.

 There are two types of corroborating evidence. The first is corroboration of an informer's conclusions; the second is corroboration of information provided by an informer. This distinction is rarely clear-cut and the same information may be corroborating in both senses; nevertheless, the distinction is useful for analysis.

The first type of corroboration is based on the premise that when similar or identical information is obtained from independent sources, each supports the other; and it is more likely that the conclusions are true than if the informa-

528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); *United States v. McCormick*, 309 F.2d 367, 372 (7th Cir. 1962), *cert. denied*, 372 U.S. 911, 83 S.Ct. 724, 9 L.Ed.2d 719 (1963); *United States v. Wilebir*, 498 F.2d 346, 349 n.2 (4th Cir. 1974); *United States v. Various Gambling Devices*, 478 F.2d 1194 (5th Cir. 1973); *United States v. McCoy*, 478 F.2d 176 (10th Cir. 1973), *cert. denied*, 414 U.S. 828, 94 S.Ct. 53, 38 L.Ed.2d 62; *Lopez v. United States*, 370 F.2d 8, 11 (5th Cir. 1966).

tion is only provided by one source. As the Supreme Court held in *Spinelli v. United States, supra,* this type of corroboration is of limited usefulness when the details are wholly innocent in themselves and only show that it would be possible for the information provided by the informant to be correct. Of course, it would be of substantial significance if the information showed that the information provided by the informant could not be correct. As will be discussed in part IV, the information provided by the unnamed informant provides the Westbury chain with this type of corroboration.

The second type of corroboration is based on the premise that if it can be shown that part of the information provided by an informer is correct, this gives credibility to the remainder of the information. This is closely analogous to the theory that an informer may be considered reliable if information provided by him in the past had proved to be correct.

The Supreme Court recognized this theory in *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), and more recently in *Spinelli* approved of the reasoning and conclusions in *Draper.* It is less relevant that this type of information is wholly innocent in itself than with corroboration of an informer's conclusions so long as the information is not common public knowledge. For example, in *Draper,* a case involving probable cause for arrest, it was not significant that the train arrived in the station as the informer predicted because anyone could determine probable arrival time by checking the train schedule. It was, however, significant that the suspect fitted the detailed description provided by the informant and arrived when predicted because his knowledge of these factors and his accuracy in reporting them established sufficient reliability to support probable cause that the remainder of his information was correct, *i. e.,* that the suspect would possess narcotics. *Draper* type corroboration, corroboration of the information (as op-

posed to the conclusions) of an informer, not only supports the reliability of the informer but also supports the reliability of the entire chain. The logic is the same: just as corroboration of a portion of an informer's information shows the reliability of the remainder of the information he supplies, corroboration of a portion of the information passing through a chain, shows the reliability of all information passing through the chain.

▌ In this case confirmation by the F.B.I. that a car had been sold by Jack White Ford for cash in $20 bills, as described by Westbury, supports the reliability of the remainder of the information passing through the chain. Defendant argues that this corroboration is not sufficient for four reasons. First, he argues that there was no showing that the unnamed employee at Jack White Ford passes either part of the *Aguilar* test. We cannot accept this argument because information provided by a businessman regarding his business, where there is no showing of any possible motive to fabricate, is inherently reliable. See *United States v. Wilson,* 479 F.2d 936 (7th Cir. 1973). Defendant's second and third arguments are that the information does not show that the defendant purchased the car (Westbury could have purchased it alone) and the act was wholly innocent in itself. Both of these contentions go to the weight of the corroboration rather than to the logic of considering these factors as probative. As discussed above, they are probative. In these circumstances we will not overturn the judgment of the district court and magistrate at least when considered in light of the corroboration provided by the unnamed informer. See part IV *infra.*

We need not decide whether a sufficient showing of credibility has been made for us to rely on the Westbury chain alone. Defendant's final argument that even if the corroboration shows Westbury and Lewis credible, it does not increase the reliability of Westbury's information that "[e]ach piece of information related by the informant must be

independently shown to have been obtained in a reliable manner." This argument overlooks the specific facts of *Draper*. In *Draper* the credibility of the informer was not in issue; the only issue was the reliability of the information. To accept the proposition quoted from defendant's brief would be to reject the concept that corroboration of part of an informer's information tends to establish the whole as reliable.

B. *The Items Sought and the House*

Defendant argues that even if all the information provided through the Westbury chain were accepted as true, it is not sufficient to show probable cause that evidence or fruits of the crime would be found in defendant's house. The quantum of information needed to support probable cause to search a suspect's house after the suspect has been linked to a crime is unclear. *Compare United States v. Teller*, 412 F.2d 374 (7th Cir. 1969), *cert. denied*, 402 U.S. 949, 91 S.Ct. 1603, 29 L.Ed.2d 118 (1971), *with United States v. Whitlow*, 339 F.2d 975 (7th Cir. 1964). See also *Iverson v. North Dakota*, 480 F.2d 414 (8th Cir. 1973), *cert. denied*, 414 U.S. 1044, 94 S.Ct. 549, 38 L.Ed.2d 335; *United States v. McCoy*, 478 F.2d 176 (10th Cir. 1973), *cert. denied*, 414 U.S. 828, 94 S.Ct. 53, 38 L.Ed.2d 62; *United States v. Bailey*, 458 F.2d 408 (9th Cir. 1972); *United States v. Lucarz*, 430 F.2d 1051 (9th Cir. 1970); *United States v. Flanagan*, 423 F.2d 745 (5th Cir. 1970). Due to the reliance which we find may be placed on the unnamed informer, who clearly identified the location of the fruits of the crime, we need not decide this issue.

IV. The Unnamed Informer

The information supplied by the unnamed informer tips the scale sufficiently for us to uphold the decision of the district court. The defendant argues that we should not consider this portion of the affidavit because the district court did not rely on it. However, a prevailing party may assert any grounds in the record in support of his judgment wheth-

er that ground was relied upon or even considered by the trial court. *Dandridge v. Williams*, 397 U.S. 471, 475 n.6, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Defendant also argues that should we consider the information provided by the unnamed informant significant, we should remand the case to the district court to consider this issue. In support of this position defendant argues that this might obviate the need for an appeal and that it is a mixed question of law and fact. The relevant documents are before this court and we deem the question to be one of law. No purpose would be served by remanding this case for a determination of this issue.

Defendant first argues that the affidavit is insufficient because it states that Captain Davenport advised affiant that he had been provided information by an unnamed informant "who he knows to be a reliable person and who has provided him information in the past." According to the defendant, Captain Davenport attempted to give the informer credibility by use of this language while refraining from making an assertion that the information the informant provided in the past had proved correct. This analysis is correct upon a hypertechnical reading of the affidavit, but it is well established that affidavits must be read in a common sense practical fashion. *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). If defendant believed that affiant was acting in bad faith, this should have been raised in the district court. See *United States v. Carmichael, supra.*

Defendant finally argues that the affidavit regarding the unnamed informer does not meet the other prong of the *Aguilar* test because it does not show where the informer obtained his information. This is redeemed by the specificity of the information provided. Defendant argues that the information was not specific because the informer listed three places. If anything this adds to his credibility; he did not state that the money would be found in one of the three places but rather that it would be

found in all three. Defendant argues this is the type of information that might be picked up as a casual rumor in a bar, but it stretches our imagination to believe someone would extort a significant sum of money and then brag in a bar about its exact hiding place, that is, if he desired to keep for himself the fruits of the crime.

 Reading the affidavit as a whole, as we must, it amply supports probable cause to issue a search warrant for defendant's house. The Westbury chain supports probable cause that the defendant committed the crime. The unnamed informer chain supports probable cause both that the defendant committed the crime and that the money was hidden in his house. Though neither of these chains are without arguable defects, together they are sufficient for us to hold that the district court did not abuse its discretion by denying the motion to quash the search warrant for the house and suppress the evidence obtained by the warrant's execution.

## V. The Defendant's Automobile

For the reasons given in connection with the house warrant, we are presented here with no fruit of the poisonous tree. With that contention of Spach disposed of, the issue as to his automobile is satisfactorily disposed of by the district court order:

> "From the averments in the second affidavit, the magistrate could infer from the strong showing of defendant's involvement in the crime; from the type and size of the missing articles; from the short time which had elapsed between the impounding of the car and the time that the crime was alleged to have occurred; from the defendant's ownership of the vehicle; and from the description of the car at the crime scene given by the victim, that there was probable cause to search the car for instrumentalities and evidence of the crime."

## VI. Disposition

Inasmuch as the only issues raised on this appeal pertained to the correctness of the trial court's rulings on the search issues, which rulings we have determined to be correct, the judgment of the district court is affirmed.

Affirmed.