COMMONWEALTH vs. RICHARD L. TOOLE, JR.

Franklin. February 9, 1983. — May 11, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Search and Seizure*, Arrest, Truck.

A gun found during a search of a truck tractor following arrest of the
driver on an outstanding warrant on a charge of assault and battery
was inadmissible in evidence by virtue of G. L. c. 276, § 1, where the
defendant was handcuffed and in the custody of two State troopers
while the search was conducted, where the search was not conducted
as an inventory search pursuant to standard police procedures, and
where before the search police did not know that the driver did not
have a firearm identification card or a license to carry firearms.
[160-164]

COMPLAINT received and sworn to in the Franklin Divi-
sion of the District Court Department on September 21,
1981.

A motion to suppress was heard by *McGuane*, J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

*Brian L. Blackburn*, Assistant District Attorney, for the
Commonwealth.

*Jack D. Curtiss* for the defendant.

WILKINS, J. We are concerned with the lawfulness of a
warrantless search of a truck tractor, commonly called a
cab, which the defendant had been driving on Route 91 in
Deerfield on September 21, 1981. A State trooper lawfully
stopped the vehicle and arrested the defendant on an out-
standing warrant for his arrest on a charge of assault and
battery. The police ordered the defendant out of the cab
and during a routine "pat-frisk" found an empty holster and
an ammunition clip containing .45 caliber bullets. The

defendant was handcuffed and, while he waited with two State troopers at the rear of the vehicle, another trooper searched the cab and found a .45 caliber weapon behind the seat. After the search, the defendant was asked if he had a firearm identification card. He said he did not. During the search, the troopers did not fear for their safety, and they intended to have the vehicle secured and taken to a garage. The defendant was charged with unlawfully carrying a firearm under his control in a vehicle.[1]

A judge sitting in the Greenfield District Court allowed the defendant's motion to suppress the firearm. The Commonwealth appealed to the Appeals Court from the order allowing the motion to suppress, and, on our motion, we transferred the appeal here.[2] We affirm the order allowing the defendant's motion to suppress the gun.

The defendant's challenge to the search of the cab and to the seizure of the gun is based on a claimed violation of

---

[1] The defendant was also charged with unlawful possession of .45 caliber ammunition in violation of G. L. c. 140, § 129C. The judge denied the defendant's motion to suppress the ammunition. That issue is not before us. The defendant had no right to an interlocutory appeal of the denial of his motion to suppress the ammunition. See Mass. R. Crim. P. 15 (a) (2), 378 Mass. 882 (1979); G. L. c. 278, § 28E.

[2] Massachusetts R. Crim. P. 15 (a) (2) authorizes the Commonwealth to prosecute an interlocutory appeal to the Appeals Court from an order in a District Court granting a motion to suppress evidence. General Laws c. 278, § 28E, also authorizes the Commonwealth to appeal from a District Court order allowing a motion to suppress evidence, but it does not explicitly state that the Commonwealth may take an *interlocutory* appeal. However, the Legislature must have contemplated an interlocutory appeal because the propriety of the suppression of the evidence should be resolved before the defendant is placed in jeopardy. Indeed, in many cases, as a practical matter, the allowance of a motion to suppress makes prosecution impossible, particularly of crimes charging that possession of the suppressed evidence was illegal.

Unlike the situation when the Commonwealth (or a defendant) seeks to prosecute an interlocutory appeal from an order on a motion to suppress in the Superior Court, no application to a single justice for leave to appeal to the Appeals Court is required when the Commonwealth seeks to appeal a District Court interlocutory order allowing a motion to suppress. See *Commonwealth* v. *Scala*, 380 Mass. 500, 507 n.7 (1980). Compare Mass. R. Crim. P. 15 (b) (appeals from the Superior Court) with Mass. R. Crim. P. 15 (a) (Commonwealth's appeals from a District Court).

G. L. c. 276, § 1. By a 1974 amendment to G. L. c. 276, § 1, which is set forth in the margin,[3] the Legislature adopted a statutory exclusionary rule concerning evidence seized during a search incident to an arrest. This rule requires the exclusion of evidence that the Supreme Court of the United States would not exclude in its implementation of the prohibition against unreasonable searches and seizures expressed in the Fourth Amendment to the United States Constitution. As we noted in *Commonwealth* v. *Wilson, ante* 115, 118 (1983), the 1974 amendment was apparently enacted in response to *United States* v. *Robinson*, 414 U.S. 218 (1973), which upheld the admissibility of contraband found on a defendant during a search made at the time of his arrest for an unrelated crime. See also *Gustafson* v. *Florida*, 414 U.S. 260 (1973) (similar facts). The search of the cab following the defendant's arrest was reasonable for Fourth Amendment purposes because it was incident to a lawful arrest and involved an area that had been in the defendant's control just prior to his arrest. *New York* v. *Belton*, 453 U.S. 454, 460 (1981).

The 1974 amendment of § 1 adopts the principles expressed in the dissent in the *Robinson* case regarding the proper scope of a search incident to arrest. *Robinson, supra* at 251 (Marshall, J., dissenting).[4] The Commonwealth

---

[3] By St. 1974, c. 508, the following paragraph was added to G. L. c. 276, § 1: "A search conducted incident to an arrest may be made only for the purposes of seizing fruits, instrumentalities, contraband and other evidence of the crime for which the arrest has been made, in order to prevent its destruction or concealment; and removing any weapons that the arrestee might use to resist arrest or effect his escape. Property seized as a result of a search in violation of the provisions of this paragraph shall not be admissible in evidence in criminal proceedings."

[4] The dissent cited *Chimel* v. *California*, 395 U.S. 752, 763 (1969), where the Court suggested limitations on the scope of searches made incident to a lawful arrest. The majority in the *Robinson* case declined to follow those dicta, preferring instead to focus on dicta that spoke of an unqualified authority to search incident to a lawful arrest. *Robinson, supra* at 230, 232-233; *id.* at 247-248 (Marshall, J., dissenting). The language of the 1974 amendment is taken almost verbatim from the *Robinson* dissent: "A search incident to arrest . . . has two basic functions: the

makes no claim or showing that the search of the cab was made to seize evidence of the defendant's commission of the crime of assault and battery. Compare *Commonwealth* v. *Beasley*, 13 Mass. App. Ct. 62, 64 (1982). Indeed, it is difficult to conceive of what evidence of a simple assault and battery there could have been. Nor does the Commonwealth argue that the search was made to remove weapons that the defendant might use to resist arrest or to escape. The defendant was already arrested, was handcuffed, and was in the custody of two State troopers while the search was conducted.[5]

The Commonwealth does argue, however, that, if there is a constitutionally permissible basis for a search, apart from a constitutionally proper search incident to an arrest, § 1 does not require the exclusion of evidence obtained in the course of such a search even though the search may also have been made incident to an arrest. We agree with that construction of § 1.[6] If the search of the cab can be justified as proper on some ground other than being incident to a lawful arrest, § 1 does not require the exclusion of evidence found in the course of such a search.

---

removal of weapons the arrestee might use to resist arrest or effect an escape, and the seizure of evidence or fruits of the crime for which the arrest is made, so as to prevent their concealment or destruction." *Id.* at 251.

[5] The Commonwealth points to no statute that justified the search. In *Commonwealth* v. *Wilson, supra,* the Commonwealth was able to rely on a statute that authorized the search of a defendant being incarcerated in a county jail and thus was able to take advantage of the last sentence of G. L. c. 276, § 1, as amended through St. 1982, c. 260, which states that § 1 does not limit "powers of search and seizure granted under other provisions of the General Laws or under the common law."

[6] Section 1 by its last paragraph states that it should not be construed to limit powers of search and seizure granted under the common law (and under the General Laws). Prior to its 1974 amendment, we believe the words "common law" included warrantless searches and seizures that were constitutionally permissible. The 1974 amendment carved out a specific exception, but it did not invalidate warrantless searches and seizures that were constitutionally proper on grounds other than being incident to a lawful arrest.

The Commonwealth argues here that there was probable cause to search the cab and that there were exigent circumstances justifying the search without obtaining a warrant.[7] The Commonwealth acknowledged at oral argument that it did not seriously argue the theory of probable cause and exigent circumstances to the motion judge.[8] The problem with the Commonwealth's argument is that it has not shown that, when the search was conducted, the police reasonably believed that there was a connection between the vehicle and any criminal activity of the defendant, an essential element to a finding of probable cause. *Commonwealth* v. *Moon*, 380 Mass. 751, 760 (1980). The empty holster and ammunition found on the defendant certainly created probable cause to believe that there was a gun in the cab. But carrying a .45 caliber revolver is not necessarily a crime. A possible crime was carrying a gun without a license to carry firearms, G. L. c. 269, § 10 (*a*). However, the police did not learn that the defendant had no firearm identification card until after the search. They apparently never asked the defendant whether he had a license to carry

---

[7] At oral argument, the Commonwealth disclaimed reliance on any claim that the search was a lawful inventory search of the vehicle, conducted because the defendant was arrested and the cab had to be taken to a safe place and secured. We thus are not presented with a case in which the Commonwealth has arguably shown that the search of the vehicle, pursuant to standard police procedures, justified the seizure of the gun. See *South Dakota* v. *Opperman*, 428 U.S. 364, 368-372 (1976); *Cady* v. *Dombrowski*, 413 U.S. 433, 446-447 (1973). We hope that the State police have standard procedures for the care and protection of a motor vehicle and its contents, when the sole-occupant operator of the vehicle has been arrested on a public way. We would particularly expect that there would be such procedures when there was cause for "concern for the safety of the general public who might be endangered if an intruder removed a revolver [believed by the police to be in the vehicle] from . . . the vehicle." *Id.* at 447.

[8] Because the Commonwealth had the burden of justifying the reasonableness of the warrantless search of the cab (see *Commonwealth* v. *Ortiz*, 376 Mass. 349, 353 [1978]), it must take the consequences of any deficiencies in the motion judge's findings on the issue of probable cause and exigent circumstances. There was no finding that exigent circumstances justified the warrantless search, although, assuming probable cause, one might infer from the facts that there was a need for prompt action.

a firearm.[9] The absence of any showing that, before. searching the vehicle, the police had probable cause to believe that there was contraband, an illegally carried weapon, in the cab distinguishes this case from cases on which the Commonwealth relies. See *Commonwealth* v. *Ortiz*, 376 Mass. 349, 353-355 (1978); *Commonwealth* v. *Corridori*, 11 Mass. App. Ct. 469, 476-479 (1981) (illegal possession of a loaded shotgun in a motor vehicle); *Commonwealth v. Concepcion*, 10 Mass. App. Ct. 613, 616-617 (1980); *Commonwealth* v. *Piso*, 5 Mass. App. Ct. 537, 541-542 (1977).

Because the Commonwealth failed to demonstrate any constitutionally acceptable justification for the search (apart from a search incident to an arrest, which, on the facts, § 1 makes inapplicable), the motion judge properly allowed the defendant's motion to suppress the gun. We are not saying that the police should not have searched for the gun which they had reason to believe was in the cab. We are saying, however, that G. L. c. 276, § 1, bars the admission of the gun in evidence, where, as here, the Commonwealth has failed to show any constitutionally acceptable basis for the search other than a search incident to a lawful arrest.

*Order allowing motion
to suppress affirmed.*

---

[9] In the circumstances, the police probably should have asked for his license to carry a firearm rather than his firearm identification card. G. L. c. 269, § 10 (*a*).