COMMONWEALTH vs. WILLIAM N. IERARDI.

Essex.   September 15, 1983. — December 23, 1983.

Present: HALE, C.J., PERRETTA, & KASS, JJ.

*Search and Seizure*, Probable cause, Inventory. *Practice, Criminal*, Reopening of evidence. *Constitutional Law*, Double jeopardy.

An affidavit in support of an application for a search warrant stating that police officers had found ammunition and a packet of white powder believed to be cocaine in the defendant's pockets while conducting an inventory search after the defendant had been brought to a police station for protective custody, and that at the time the defendant was placed in custody he had been operating an automobile registered to him established probable cause to believe that a gun and more drugs would be found in the defendant's automobile. [298-302]

The judge in a criminal case, who had excluded from evidence certain items seized from the defendant's automobile which police officers had failed to list on the return of a search warrant, did not err in denying the defendant's motion to suppress all evidence seized from the automobile. [302]

At the trial of an indictment charging the defendant with a third offense of unlawful possession of a firearm in an automobile, the defendant's right to be secure from double jeopardy was not infringed by the judge's permitting the Commonwealth to reopen its case after the defendant had moved for a required finding of not guilty, where the Commonwealth's failure to introduce evidence that the defendant was the same individual named in two prior firearms convictions was based on defense counsel's agreement to stipulate his identity. [302-303]

INDICTMENTS found and returned in the Superior Court Department on April 23, 1979.

Motions to suppress evidence were heard by *James P. Donohue*, J., and *Abrams*, J. The cases were tried before *Abrams*, J.

*Henry D. Katz* for the defendant.

*Linda A. Andros*, Assistant District Attorney, for the Commonwealth.

PERRETTA, J. The defendant appeals from his convictions on indictments charging him with the unlicensed possession of a firearm in an automobile, his third such offense, G. L. c. 269, § 10(*a*) and (*d*), illegal possession of ammunition, G. L. c. 269, § 10(*h*), illegal possession of a controlled substance, diethylpropion, G. L. c. 94C, § 34, receiving stolen property, G. L. c. 266, § 60, and operation of a motor vehicle without a license, G. L. c. 90, § 10. He claims that ammunition and drugs taken from his person while he was in protective custody, see G. L. c. 111B, § 8, did not provide probable cause for the issuance of a warrant to search his car for a gun, ammunition, and drugs. He also argues that his State and Federal constitutional guarantees against double jeopardy were violated when the trial judge, after purportedly allowing his motion for a required finding of not guilty on the indictment under G. L. c. 269, § 10(*d*), permitted the Commonwealth to reopen its case. We affirm the judgments.

1. *The Motion to Suppress.*

We take the facts leading up to the search as set out in the judge's subsidiary findings, which the defendant does not challenge. We reexamine the ultimate finding and conclude that there was probable cause for the issuance of a warrant to search the defendant's car. See *Commonwealth* v. *Moon,* 380 Mass. 751, 756 (1980).

About 2:00 A.M., on December 25, 1977, a Danvers police officer saw a car, engine running and headlights dark, parked on a highway exit off-ramp. He approached the car, saw the defendant asleep behind the steering wheel, and rapped on the window. In response to the officer's inquiry as to whether he was all right, the defendant rolled down the window and said, "Yes." The officer smelled alcohol on the defendant's breath, noted that his eyes appeared "watery," and asked the defendant to produce his license and registration. The defendant turned over the requested documents, and at some point another officer arrived at the scene. The defendant was taken from his car to stand next to the police cruiser while a radio check was made on his

social security number. As this was being done, the defendant twice asked to return to his car, the first time stating he wanted a cigarette and the second time asking to sit down because he felt ill. The officers refused both requests.

Leaving the defendant's car unlocked and unattended, the police took the defendant to the Danvers police station, placed him in protective custody, and arranged to have his car towed to a service station. An inventory search of the defendant's person[1] revealed seven .38 caliber cartridges and a packet of white powder which the police believed to be cocaine. In answer to questions put to him by the police without Miranda warnings, the defendant stated that he did not possess either a permit to carry a firearm or a firearms identification card.

The police then applied for a search warrant and arranged to have the defendant's car towed to the police garage. The affidavit in support of the application for the warrant reads, in relevant part: "On 12/25/77, [the defendant] was brought to the station for protective custody. An inventory of his belongings was made and seven 380 mm bullets were taken from his pants pocket. A packet of white powder believed to be cocaine, a controlled substance, was also taken from his pants pocket. At the time [the defendant] was placed in protective custody, he was operating a 1972 Dodge Polara . . . which is registered to him. [The defendant] stated that he never had a pistol permit or firearm identification card issued to him." The items for which the warrant was requested were described as "[a] 380 mm handgun and ammunition for same and a quantity of cocaine, a controlled

---

[1] When a person is taken into protective custody, a search may be conducted in accordance with G. L. c. 111B, § 8, sixth par., as amended by St. 1973, c. 1143, which provides in pertinent part: "If the police officer reasonably believes that his safety or the safety of other persons present so requires, he may search such person and his immediate surroundings, but only to the extent necessary to discover and seize any dangerous weapons which may on that occasion be used against the officer or other person present: provided, however, that if such person is held in protective custody at a police station all valuables and all articles which may pose a danger to such person or to others may be taken from him for safekeeping and if so taken shall be inventoried."

substance." The search of the car produced three guns, two of which were loaded.

The judge construed the affidavit without reference to the defendant's statement that he did not possess a firearms license or identification card, cf. *Commonwealth* v. *Hall,* 366 Mass. 790, 795 (1975), and he ruled that the facts that the car was registered to the defendant and that the inventory search revealed seven "bullets" and a packet of substance believed to be cocaine "were minimally sufficient to warrant the conclusion that contraband was more likely than not present in the vehicle." See *Commonwealth* v. *Miller,* 366 Mass. 387 (1974). There a majority of the court, three justices dissenting, concluded that where the defendant was found with a small quantity of marihuana on his person and uttered words which could be construed as consciousness of criminal activity ("Let's go, here come the cops") there was probable cause for a warrantless search of the van the defendant was driving. *Id.* at 389. Compare *Commonwealth* v. *White,* 374 Mass. 132, 140 (1977), aff'd by an equally divided court, 439 U.S. 280 (1978), where an affidavit, reciting that the defendant possessed one marihuana cigarette in the breast pocket of his shirt at the time of his arrest for operating under the influence, failed to provide a "correlation between the untainted allegations in the affidavit and the presence of controlled substances in the defendant's car."

The defendant claims error in the judge's conclusion that "the facts of this case more closely resemble those present in the *Miller* decision." We view the facts of the instant case as stronger than those found in *Miller.*

When the police discovered cartridges in the pocket of the defendant's trousers, immediately after his removal from the car which he owned and had been driving, they could reasonably believe that a search of the car would reveal a gun. See *Commonwealth* v. *Toole,* 389 Mass. 159, 163 (1983) ("The empty holster and ammunition found on the defendant certainly created probable cause to believe that there was a gun in the cab").

The defendant argues that, before this reasonable belief can constitute probable cause to justify a search warrant, the police also had to have probable cause to believe that the defendant had no legal right to possess a gun or ammunition, thereby making those items contraband. He argues further that the defendant's possession of a small quantity of a controlled substance on his person does not provide probable cause to believe that a cache of drugs will be found in his car.

It makes no difference in the present case that the police, absent the allegation in the affidavit concerning the defendant's statement, had no probable cause to believe that any gun found in the defendant's car would be contraband. In seeking a warrant, the police had to show that a search would probably produce "property or articles stolen, embezzled or obtained by false pretenses, or otherwise obtained in the commission of a crime," or "property or articles which are intended for use, or which are or have been used, as a means or instrumentality of committing a crime." G. L. c. 276, § 1, First & Second, as appearing in St. 1964, c. 557, § 1. Compare *Commonwealth* v. *Toole, supra*. There the defendant was apprehended on an outstanding warrant for his arrest on a charge of assault and battery. Under G. L. c. 276, § 1, as amended by St. 1974, c. 508, only "fruits, instrumentalities, contraband and other evidence of the crime for which the arrest has been made" may be seized lawfully during a search conducted incident to an arrest. Thus, the gun seized by the police could be admitted in evidence only if it were contraband, as it could not be characterized as the "fruits" or "instrumentalities" of the assault and battery. *Commonwealth* v. *Toole*, 389 Mass. at 164. It is important to note that, in reaching this conclusion, the court stated: "We are not saying that the police should not have searched for the gun which they had reason to believe was in the cab." *Ibid.*

Whether the police had probable cause to believe a gun in the defendant's car would be contraband is here immaterial. Nor is there any significance in the fact that the substance which the police believed to be cocaine was in fact diethyl-

propion. See *Commonwealth* v. *Bond,* 375 Mass. 201, 207 (1978); *Sullivan* v. *District Court of Hampshire,* 384 Mass. 736, 744 (1981).

The dispositive point is that the bullets and drugs found on the defendant's person could be reasonably linked together and associated with drug sales. Cf. *Commonwealth* v. *Bond,* 375 Mass. at 208. It is this not unusual combination which "sufficiently establishes a nexus between the criminal activity sought to be investigated" and the defendant's car. *Commonwealth* v. *White,* 374 Mass. at 140. We conclude that the allegations set out in the affidavit, as relied upon by the judge, show that there was probable cause to believe that a gun and more drugs would be found in the defendant's car. Our conclusion makes it unnecessary for us to consider whether the search can be upheld on any other basis. See, e.g., *id.* at 140-141.

2. *The Amended Motion to Suppress.*

In executing the search warrant, the police seized certain items from the trunk of the defendant's car which they failed to list on the return of the warrant, as required by G. L. c. 276, § 3A. Upon the defendant's objection, the trial judge refused to receive those articles in evidence. The defendant argues, however, that the defective inventory "infected the entire search and seizure and the suppression of all evidence seized was mandated."

The trial judge, who had already excluded the unlisted items from evidence, did not err in denying the amended motion to suppress. See *Commonwealth* v. *Cromer,* 365 Mass. 519 (1974). See also *United States* v. *Dudek,* 530 F.2d 684, 687-688 (6th Cir. 1976).

3. *The Motion for a Required Finding of Not Guilty.*

After the defendant was found guilty of the substantive portions of the firearms violations, the Commonwealth, under G. L. c. 278, § 11A, moved for trial on that part of the indictment charging that it was the defendant's third such offense. See G. L. c. 269, § 10(*d*). The Commonwealth introduced in evidence two certified copies of prior convictions of one William N. Ierardi for unlawfully carry-

ing a firearm and rested. The defendant moved for a required finding of not guilty, Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979), and, without hearing from the Commonwealth, the trial judge stated that he was going to allow the motion because the Commonwealth had failed to establish that the defendant was the same William N. Ierardi named in the two prior convictions.

The Commonwealth immediately moved to reopen its case, informing the trial judge that it had intended to call the defendant's counsel on the two prior convictions as a witness to establish the necessary identification but had not done so because present defense counsel had agreed to stipulate to identity. Defense counsel acknowledged the stipulation, the trial judge allowed the Commonwealth to reopen its case, and defense counsel stipulated on the record that the defendant was the same William N. Ierardi named in the prior convictions.

There was no violation of the defendant's right not to be put twice in jeopardy. See *Commonwealth* v. *Cote,* 15 Mass. App. Ct. 229, 240-243 (1983).

*Judgments affirmed.*