COMMONWEALTH *vs.* SEAN HARDING.

No. 88-P-674.

Plymouth. February 10, 1989. — June 7, 1989.

Present: BROWN, DREBEN, & FINE, JJ.

*Probable Cause. Arrest. Search and Seizure,* Automobile, Arrest, Probable cause. *Constitutional Law,* Search and seizure.

Where police officers were shown to have had probable cause to arrest a criminal defendant, the defendant's motion to suppress a handgun found by the police in his automobile at the time of the arrest was properly denied. [434-437]

The search of a criminal defendant's automobile, incident to his lawful arrest for various offenses, which resulted in the seizure of a gun, was not in violation of the provisions of G.L. c. 276, § 1, where the police, having received information from a named informant that the defendant carried guns in his automobile, had noticed an ammunition clip and shotgun shells in plain view on the console of the defendant's vehicle. [437-438]

COMPLAINT received and sworn to in the Plymouth Division of the District Court Department on October 17, 1985.

In the jury session of the Wareham Division, a pretrial motion to suppress evidence was heard by *John B. Leonard, J.*, and the case was tried before *Paul E. Ryan, J.*

*James R. McMahon, Jr.*, for the defendant.

*Linda M. Fleming*, Assistant District Attorney, for the Commonwealth.

DREBEN, J. Charged with various offenses[1] arising out of three break-ins in Plymouth, as well as with carrying a firearm without a license, the defendant was acquitted, or verdicts were directed in his favor, on all charges other than the firearms violation. He appeals from his conviction of that offense on

---

[1] Three counts of breaking and entering in the daytime, three counts of larceny, and two counts of malicious destruction of property.

the ground that the gun in question, a .22 caliber handgun found by the police in his automobile, was illegally seized in a warrantless search incident to an unlawful arrest. Relying on the Aguilar-Spinelli test, see note 6, *infra*, he claims that the police, acting on insubstantial hearsay, lacked probable cause to arrest him and, therefore, his motion to suppress the gun should have been allowed. We affirm.

After hearing evidence, the motion judge, contrary to the recommended practice, denied the defendant's motion to suppress without making any findings. *Commonwealth* v. *Parham*, 390 Mass. 833, 837-838 (1984). *Commonwealth* v. *O'Connor*, 21 Mass. App. Ct. 404, 405 (1986). Smith, Criminal Practice and Procedure § 1347 (2d ed. 1983). Although this failure makes our task more difficult, the lack of findings, in itself, does not create reversible error. *Commonwealth* v. *O'Connor*, *supra* at 405. See *Commonwealth* v. *Raedy*, 24 Mass. App. Ct. 648, 649 (1987). Since the only witness at the hearing on the motion to suppress was a police officer, John W. Rogers, Jr., there was no conflict in testimony. We proceed on the basis, not disputed by the defendant, that the judge denied the motion because he gave credence to Officer Rogers's testimony.

Officer Rogers testified to the events leading to the seizure of the handgun.[2] On October 7, 1985, he and his partner, Officer Colley, investigated a break-in at the home of Paul Franklin[3] at 8 Kelley Street in the Buttermilk Bay area of

---

[2] Although the record appendix reproduces police reports which contain additional evidence supporting the judge's denial of the motion to suppress, we have not relied on those reports. Both the Commonwealth and the defendant, in response to an inquiry of the panel, agreed that the reports were not introduced in evidence at the hearing before the motion judge.

[3] A cast of characters may be helpful to the reader:

| | |
|---|---|
| Rogers and Colley ....... | police officers |
| Roche and Barnaby ..... | admitted participants in the Kelley St. theft |
| Franklin ................... | victim of Kelley St. theft |
| Butler ..................... | telephone caller who stated he knew of location of items stolen from Kelley St. |
| MacDonald .............. | victim of Cypress St. theft who, together with Allison, |
| Allison .................... | returned the stolen property |
| Michelle Reed ........... | defendant's girlfriend |

Plymouth. Stereo equipment, video cassettes, cash, and a piggy bank had been taken from Franklin's home. Officer Rogers observed that a cellar window had been forced open and saw cassettes in their storage cases strewn in the backyard. Outside the cellar window he saw a tire iron.

After the officers left Kelley Street, they went to the home of Robert MacDonald at a nearby address, 80 Cypress Street, where another break-in had been reported. MacDonald told the officers that a stereo receiver, a turntable unit and speakers had been stolen from his bedroom. MacDonald also informed the officers that John Roche, who lived near the Franklin and MacDonald homes, had shown him some stereo equipment which he, Roche, had acquired earlier that day.

The policemen proceeded to the Roche residence where they were shown stereo equipment by Roche's mother and were told by Roche that he had that day received the components from a friend, the defendant Sean Harding. After taking the equipment to Franklin, who confirmed that it was indeed his, the officers returned to the Roche residence and arrested the seventeen year old Roche. He told them that he had driven with the defendant and one James Barnaby to Franklin's house in the defendant's automobile, a light blue Chevrolet Camaro, that he had watched James Barnaby and the defendant enter the Franklin home on Kelley Street, and that he had seen them leave the house carrying stereo components. The equipment was placed in the defendant's automobile and taken to Roche's house. Barnaby corroborated Roche's account, and he, too, was placed under arrest.[4]

A warrant issued for the defendant's arrest for the Kelley Street break-in, and two days later, on October 9th, he "turned himself in," telling the police officer on duty that he was living in his automobile.

Also on October 9, Franklin received two telephone calls from one Michael Butler, a youth who lived in the area, informing Franklin that he knew the location of some of Franklin's

---

[4] At the defendant's trial, both Roche and Barnaby exercised their rights under the Fifth Amendment to the United States Constitution.

belongings, that two of his friends would return them to Franklin's home, and that the defendant had a shotgun and a handgun in his car. Soon thereafter, MacDonald, the victim of the Cypress Street theft, and one Michael Allison came to Franklin's house and unloaded equipment from the trunk of a green automobile onto the front lawn.

Earlier, Officers Rogers and Colley had gone to Franklin's home upon being informed by Franklin of Butler's first telephone call. While they were there, Butler made his second call at which time he also spoke to Officer Colley. The officers left, but returned in time to talk to Allison and MacDonald.

Franklin, in Officer Rogers's presence, recognized all of the equipment as his, except for two items, a small black and white television set and a Sony stereo speaker. MacDonald identified the stereo speaker as the one stolen from his bedroom, and, after a check of police records, the television set was determined to be an item stolen in a break-in at 28 Buzzards Bay Drive a week or so prior to the Kelley Street theft.

Allison and MacDonald informed Officers Rogers and Colley that they had received the equipment from a Michelle Reed, the defendant's girlfriend. She resided at Gray Gables in Bourne and had told Allison and MacDonald that she had received the items from the defendant.

Upon returning to the station, Officer Rogers and his partner filled out police reports, requested an arrest warrant for the two additional breaks, and tried, unsuccessfully, to find the defendant. Arrest warrants were not obtained.[5]

On October 20, 1985, while on patrol, Officers Rogers and Colley observed the defendant's light blue Chevrolet Camaro parked on Buzzards Bay Drive. They asked the driver to identify himself; it was the defendant. They arrested him for the

---

[5] Officer Rogers testified that, to obtain an arrest warrant, police department procedure required him to file three documents: a report stating his reasons for wanting a warrant, an application for a warrant, and a complaint application. These documents had to be given to the department prosecutor, and it was the latter who applied for a warrant at the courthouse. Although Officer Rogers followed the proper procedure and made several inquiries at the station, he did not receive the warrant. The record does not disclose whether the application for a warrant was acted upon.

Cypress Street and Buzzards Bay Drive break-ins, handcuffed him and put him in the police cruiser. The officers then noticed a clip containing ammunition and several shotgun shells on the console of the defendant's automobile between the two bucket seats. They searched the vehicle, and under the console, found a .22 caliber automatic pistol.

1. The crucial question is whether the police officers had probable cause, to arrest the defendant. If not, the gun was seized as a result of an illegal arrest and should have been suppressed. *Commonwealth* v. *Bottari*, 395 Mass. 777, 783, 785 (1985). *Commonwealth* v. *Borges*, 395 Mass. 788, 795-797 (1985).

The defendant claims that the police did not have probable cause, as the Commonwealth's evidence failed to meet the two prongs of the Aguilar-Spinelli test.[6] Although the United States Supreme Court in *Illinois* v. *Gates*, 462 U.S. 213 (1983), has set forth a "totality of the circumstances" test for Fourth Amendment purposes, the Supreme Judicial Court in *Commonwealth* v. *Upton*, 394 Mass. 363, 375 (1985), held that to pass muster under art. 14 of the Massachusetts Declaration of Rights, an arrest (or search) based on information from an unknown informant must satisfy each of the two requirements of the Aguilar-Spinelli standard: that is, the basis of knowledge of the informer must be disclosed, and there must be a showing that the informant is credible or that his information is reliable. "[I]ndependent police corroboration [however] can make up for deficiencies in either or both prongs of the Aguilar-Spinelli test." *Id.* at 376.

These are the rules for an *unidentified informant*. Where, instead of an anonymous informant, a named and identified individual is the source of information, the requirement of reliability is relaxed. *Commonwealth* v. *Atchue*, 393 Mass. 343, 347-348 (1984). *Commonwealth* v. *Burt*, 393 Mass. 703, 710 (1985), and cases cited. *Commonwealth* v. *Martin*, 6 Mass. App. Ct. 624, 627-628 (1978). "Information provided by a

---

[6]*Aguilar* v. *Texas*, 378 U.S. 108 (1964). *Spinelli* v. *United States*, 393 U.S. 410 (1969).

named informant is generally accorded more weight." *Commonwealth* v. *Grzembski*, 393 Mass. 516, 522 (1984).

*Grzembski, supra,* also involved a chain of hearsay. In the course of investigating a burglary of a house in Sturbridge, the police sought a warrant to search Grzembski's apartment. The affidavit in support of the warrant relied on a signed statement obtained from one Edward Dodge. In the statement, Dodge told of a visit on a given date to his step-brother Philip Livernois at a certain address; there he saw a color television set which Livernois admitted was stolen. Livernois told Dodge that a friend who lived upstairs (Grzembski) had some stolen items such as a Sony stereo. In addition to having Dodge's statement, the police knew that Grzembski had been on the victim's premises on the day of the theft, and had previously been convicted of burglary and larceny. In the language set forth in the margin,[7] the Supreme Judicial Court held that Livernois was "a sufficiently reliable source" of information, and that the police had probable cause to search Grzembski's apartment. See also *Commonwealth* v. *Stewart*, 358 Mass. 747, 751 (1971) (citizen informer based statement on what had been told to him by former occupant of defendant's apartment).

We consider that the police in this case had at least as much evidence as the police had in *Grzembski* to support a reasonable belief that the defendant had participated in criminal activity when they arrested him for the Cypress Street and Buzzards Bay Drive thefts. The defendant had been plainly implicated in the Kelley Street break-in by two participants in that crime,

---

[7] "Although Dodge's statement constituted hearsay, it nevertheless had sufficient indicia of reliability and trustworthiness to ground a finding of probable cause. The statement was from an identified citizen living at a known address who asserted that he had personally learned of certain criminal activity from his step-brother. As Dodge's relative and an apparent participant in the criminal activity, Livernois constituted a sufficiently reliable source of information. In his statement, Dodge stated that Livernois admitted having stolen a television with radio similar to one known to have been stolen from the house in Sturbridge. Taken together with police knowledge from independent sources that the defendant was on the premises on the day of the incident and had a record of burglary and larceny, this information was sufficient to support a reasonable belief that the defendant had committed a crime." 393 Mass. at 521-522.

Roche and Barnaby. The police had heard Michael Butler foretell the return of Franklin's property. The call was soon followed by the appearance of Allison and MacDonald. Included in the property returned to Kelley Street were items stolen from the two other break-ins. The Cypress Street and Buzzards Bay Drive break-ins were close in time and location to the Kelley Street theft.

In addition, Allison and MacDonald were identified informants who were subject to questioning by Officers Rogers and Colley. See *Commonwealth* v. *Atchue*, 393 Mass. at 347, quoting from *Commonwealth* v. *Fleurant*, 2 Mass. App. Ct. 250, 253 (1974) ("The specificity of the information supplied, the affiant's occasion to question the informant, and the fact that the informant was named and was not a paid informer are all relevant circumstances in determining the informant's credibility"); *Commonwealth* v. *Burt*, 393 Mass. at 710.

These informants told the police that they had received the goods from the defendant's girlfriend, Michelle Reed, who lived at Gray Gables in Bourne. Her statement, reported by Allison and MacDonald, that she had received the goods from the defendant, was corroborated by information from Roche, Barnaby, and Butler tying the defendant to the property stolen from Kelley Street. Since her information about the Kelley Street property seemed correct, her statement as to the source of the other property included in the recovery could be given credence. *United States* v. *Spach*, 518 F.2d 866, 871 (7th Cir. 1975) ("[i]f it can be shown that part of the information provided by an informer is correct, this gives credibility to the remainder of the information. This is closely analogous to the theory that an informer may be considered reliable if information provided by him in the past had proved to be correct"). The judge here had a "substantial basis" for crediting the hearsay statement of Michelle Reed. See *Commonwealth* v. *Stevens*, 362 Mass. 24, 27 (1972); *Commonwealth* v. *Burt*, 393 Mass. at 710-711. See also *Commonwealth* v. *Grzembski*, 393 Mass. at 521; *United States* v. *Spach*, 518 F.2d at 870-871.

That the defendant had already been arrested for the Kelley Street incident does not require ignoring the evidence of that

theft for purposes of determining whether the police had probable cause to arrest him for the other two thefts. The recovery, through Allison and MacDonald, of property taken from all three locations indicates that the crimes were connected. The items stolen in each break-in need not be looked at in isolation. See *Commonwealth* v. *Atchue*, 393 Mass. at 347, quoting from *Commonwealth* v. *Stewart*, 358 Mass. 747, 751 (1971) ("sufficiency of the affidavit [in support of the search warrant] is to be decided on the basis of a consideration of all of its allegations as a whole, and not by first dissecting it and then subjecting each resulting fragment to a hypertechnical test of its sufficiency standing alone"); *Commonwealth* v. *Burt*, 393 Mass. at 715. In sum, we conclude there was an ample showing of probable cause to arrest the defendant for the Cypress Street and Buzzards Bay Drive break-ins.

2. Even if there was a lawful arrest, the defendant claims the seizure of the gun was invalid under G. L. c. 276, § 1, set forth in the margin.[8] *Commonwealth* v. *Toole*, 389 Mass. 159, 163 (1983). That statute allows a search incident to an arrest only for the purposes of seizing "evidence of the crime for which the arrest has been made" or for removing weapons which the arrestee might use "to resist arrest or effect his escape."

In *Toole*, the defendant was arrested for simple assault and battery. During a routine "pat-frisk" the police found an empty holster and an ammunition clip containing .45 caliber bullets. He was handcuffed, and while he waited with two troopers, a third searched the cab of his truck and found a .45 caliber weapon behind the seat. In ordering the gun suppressed, the Supreme Judicial Court explained that the Commonwealth "has not shown that, when the search was conducted, the police

---

[8] The second paragraph of G. L. c. 276, § 1, inserted by St. 1974, c. 508, provides in relevant part: "A search conducted incident to an arrest may be made only for the purposes of seizing fruits, instrumentalities, contraband and other evidence of the crime for which the arrest has been made, in order to prevent its destruction or concealment; and removing any weapons that the arrestee might use to resist arrest or effect his escape. Property seized as a result of a search in violation of the provisions of this paragraph shall not be admissible in evidence in criminal proceedings."

reasonably believed that there was a connection between the vehicle and any criminal activity of the defendant, an essential element to a finding of probable cause." *Id.* at 163. The Commonwealth made no claim that the search of the cab was made to seize evidence of the defendant's commission of the crime of assault and battery. "Indeed, [said the court] it is difficult to conceive of what evidence of a simple assault and battery there could have been." *Id.* at 162.

Not so in the present case. The defendant was arrested for the Cypress Street and Buzzards Bay Drive incidents, and there were still unrecovered items from those thefts. The defendant had told the police that he was living in his car. The search could properly be made to obtain evidence of the crimes for which he was arrested.[9] See *Commonwealth* v. *Brillante*, 399 Mass. 152, 155 n.6 (1987).

In addition, unlike the situation in *Toole*, there is here a reasonable connection between the break-ins and the carrying of weapons. *Commonwealth* v. *Bond*, 375 Mass. 201, 208 (1978) (guns and ammunition can readily be linked in purpose with equipment for break-ins). See *Commonwealth* v. *Ierardi*, 17 Mass. App. Ct. 297, 302 (1983). Since the police had probable cause to arrest the defendant, they could ask him to leave the automobile and were, therefore, lawfully in a position to see the ammunition in plain view on the console. See *Commonwealth* v. *Sergienko*, 399 Mass. 291, 293 (1987). Once the officers saw the ammunition (knowing, in addition, of Butler's statement that the defendant carried guns in his automobile), they were justified in searching for the gun; there was a sufficient nexus between the criminal activity for which the defendant was arrested and the object of the search.

*Judgment affirmed.*

---

[9] The reasons given by the police for conducting the search are not dispositive. *Commonwealth* v. *Miller*, 366 Mass. 387, 389 (1974).